Samuel SHLOMCHIK

v.

RETIREMENT PLAN OF the AMALGA-MATED INSURANCE FUND

and

Ronald Minikes.

Civ. A. No. 80–1897.

United States District Court,
E. D. Pennsylvania.

Oct. 31, 1980.

H. Donald Busch, Busch & Schramm, Bala Cynwyd, Pa., for plaintiff.

William J. Einhorn, of Sagot & Jennings, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This is an action for accrued pension benefits allegedly due plaintiff under the Retirement Plan of the Amalgamated Insurance Fund (Fund), brought pursuant to Section 502(a)(1)(A) and (B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(A) and (B). Plaintiff also seeks, pursuant to Section 502(c) of ERISA, 29 U.S.C. § 1132(c), award of statutory penalty of $100.00 per day for each day that defendants allegedly failed to provide plaintiff with a copy of the Plan, in accordance with Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4). Plaintiff further asserts a violation of defendant's fiduciary obligation under § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).

Depositions, stipulations, exhibits and other evidence were submitted to this court for our determination. Based upon the evidence presented, and for the reasons set forth below, judgment will be entered in favor of the defendants and against the plaintiff.

Plaintiff was employed by the Universal Coat Front Co. (Universal) from 1937 through 1943. He left the industry and did not return until the fourth quarter of 1969 and remained until September 1978, being employed during this period by Quaker Coat Front Co. (Quaker). Quaker ceased all operations in November, 1978, and paid its final payroll covered by the Plan in December, 1978. Plaintiff became a member of the Amalgamated Clothing Workers Union in 1937, and was reinstated in 1969.

On September 13, 1978, plaintiff's attorney wrote to plaintiff's local union, Local No. 362, Philadelphia Joint Board, Amalgamated Clothing Workers of America, stating that he represented a union member who was thinking of retiring, and requesting a copy of the Plan. (P–1). Defendant Ronald Minikes (Minikes), as the designee of the Fund's administrator, responded to the attorney by letter of September 19, 1978, stating that the letter of September 13th had been referred to him, and requesting the attorney's client's name, social security number, and last employer. (P–2). By letter of October 17, 1978, plaintiff's attorney provided this information to defendant Minikes, and again requested the information sought in the September 13th letter. (P–3).

Plaintiff's attorney wrote to Minikes again on December 17, 1978 indicating that he had not yet received the information requested, and asking again for that information. (P–4). Defendant Minikes' reply letter of December 26, 1978, stated that Minikes had no record of the October 17th letter. (P–5). The letter of December 26th also requested additional information in the event that plaintiff was "interested in a statement as to his accrued benefit." Plaintiff's attorney sent a copy of the October 17th letter to Minikes on January 2, 1979.

Plaintiff filed an application for retirement benefits on January 8, 1979. (D–2). On April 27, 1979, plaintiff was notified that his application had been rejected for failure to meet the eligibility requirements of the Fund. (P–8). A copy of the Plan was sent to plaintiff at that time. Plaintiff's appeal to the Executive Committee of the Trustees of the Fund was denied on December 11, 1979. (P–13).

■ Defendant Minikes challenges this court's exercise of *in personam* jurisdiction over him. We reject this contention because section 502(e)(2), 29 U.S.C. § 1132(e)(2), of the statute under which this action is brought, ERISA, provides for nationwide service of process. 29 U.S.C. § 1132(e)(2) provides:

> "Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

Defendant Minikes has been served in a district where found, there has been no objection made to the manner of service of process, and there are no restrictions imposed by the Constitution on the exercise of jurisdiction by the United States over its residents. *In personam* jurisdiction over defendant Minikes is thus proper. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 191–92, 99 S.Ct. 2710, 2720–21, 61 L.Ed.2d 464 (1979) (dissenting opinion); *Fitzsimmons v. Barton*, 589 F.2d 330, 332–34, (7th Cir. 1979); *see, Great Western Corp. v. Kidwell*, 577 F.2d 1256, 1270 (5th Cir. 1978), *reversed on other grounds, sub nom, Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *Black v. Acme Markets, Inc.*, 564 F.2d 681, 684 (5th Cir. 1977). Defendant Minikes' reliance on an analysis of the Pennsylvania long–arm statute and due process requirements is inapposite. *See, Illinois v. City of Milwaukee*, 599 F.2d 151, 156 n.3 (7th Cir. 1979), *cert. granted on other grounds,* —— U.S. ——, 101 S.Ct. 262, 66 L.Ed.2d 125 (1980). (minimum contacts issue raised only where Congress has not provided for nationwide service of process). *See also* Judge Becker's scholarly review of due process and the limitations on the Congres-

sional grant of nationwide service of process in *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa.1974).

We turn now to plaintiff's claim for pension benefits, brought pursuant to 29 U.S.C. § 1132(a), which provides in relevant part that:

"(a) A civil action may be brought–

(1) by a participant or beneficiary–

(A) . . .

(B) to recover benefits due to him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;"

Eligibility for retirement benefits under the Plan is governed by section 4.1 of the Plan, which provides:

"4.1 Normal Retirement

A Participant shall be eligible for a normal retirement pension if his employment is terminated on or after his Normal Retirement Date. [P]rovided that the Participant:

(a) Has filed an application for retirement benefits,

AND

(b) Has retired, as evidenced by a cessation of all employment for one calendar month,

AND

(c) Has been actively employed by Covered Employment, in accordance with the provisions of Article III, by an Employer or Employers for not less than ten Years prior to the filing of such application,

OR

Has been actively so employed in Covered Employment for at least five Years since the date upon which the Employer became obligated to contribute to the Fund for retirement purposes, and has been actively employed in the Industry (as set forth in Article III) for 20 or more Years prior to the filing of his application."

Normal Retirement Date is defined by section 2.1(q) of the Plan:

"(q) *Normal Retirement Date*–The first day of the calendar month coincident with or immediately following the date of the Employee's 65th birthday or completion of ten years of Covered Employment."

Covered Employment is defined in section 2.1(j) of the Plan:

"(j) *Covered Employment*–The active employment of an Employee for whom the Employer is obligated to contribute to the Fund for retirement purposes."

Active Employment is defined in section 3.2(a) of the Plan:

"(a) Active Employment in the Industry:

Credit for a Year of active employment in the Industry shall only be given for a Year in which an Employee is actively employed in the Industry for at least 26 weeks for Years prior to January 1, 1976, or 1,000 hours for Years beginning after December 31, 1975."

Employer is defined in section 2.1(g) of the Plan:

"(g) Employer–A manufacturer or contractor of men's and boys' clothing who is obligated to contribute and has contributed to the Fund, and also includes a local union affiliated with the Union which local union is obligated to contribute and has contributed to the Fund."

Employee is defined in section 2.1(h) of the Plan:

"(h) Employee–An individual who is in the collective bargaining unit and is employed by an Employer."

Section 3.4(b) of the Plan provides:

"(b) Employment prior to January 1, 1971

Any other provision of the Plan to the contrary notwithstanding . . . credit shall be given only for Years of Covered Employment prior to January 1, 1971, if the Employee has at least three Years of Covered Employment after December 31, 1970."

■ Plaintiff's claim for pension benefits must fail as he has not met the eligibility

requirements of the Plan. Section 4.1(c) of the Plan requires ten years of covered employment, *or* five years of covered employment with twenty years of active employment in the industry. Plaintiff has only nine years of covered employment, 1970 through 1978; he did not have 26 weeks of employment in 1969, as required by section 3.2(a). Plaintiff has a total of only sixteen years, counting the years 1937 through 1943, of employment in the industry. Plaintiff's employment with Universal between 1937 and 1943 was not "covered employment" within the meaning of section 2.1(j) of the Plan as his employer was not obligated to contribute to the Fund for retirement purposes, as required by that section. Such an obligation to contribute would have been impossible as the Fund was not created until 1945 and contributions from Universal did not commence until December 10, 1945.

Plaintiff claims that contributions to the Fund were made by his local union during his 1937–1943 employment, and that the union comes within the Plan's definition of Employer, section 2.1(g), *supra*. Section 2.1(g) includes a local union within the definition of employer, but must be construed to refer only to a local union which is itself an employer. Even if contributions to the Fund were possible, and were in fact made by plaintiff's union, plaintiff's employer was Universal, not his union. Thus, plaintiff was not an employee for whom the employer was obligated to contribute to the Fund.

We consider next plaintiff's claim for statutory damages for failure of defendants to provide him with a copy of the Plan.

29 U.S.C. § 1132(a) provides in relevant part that:

"(a) A civil action may be brought–
 (1) by a Participant or beneficiary–
 (A) for the relief provided for in subsection (c) of this section . . . ."

29 U.S.C. § 1132(c) provides:

"(c) Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

29 U.S.C. § 1024(b)(4) provides in relevant part:

"(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated . . . . "

Plaintiff's original request for a copy of the Plan (P–1) was made by letter of September 13, 1978, to plaintiff's union, The Philadelphia Joint Board, Amalgamated Clothing Workers of America, rather than to the Administrator of the Amalgamated Retirement Fund. However, defendant Minikes' letter of September 19, 1978 to plaintiff's attorney, on behalf of the Fund, and as the Administrator's designee states that the letter of September 13 "has been referred to me for reply." (P–2). Defendant Fund and defendant Minikes were thus aware of plaintiff's attorney's request for a copy of the Plan at least as of September 19, 1978, yet plaintiff did not receive a copy of the Plan until April 27, 1979. In his deposition testimony, defendant Minikes asserts that he had not seen the September 13th letter. However, this cannot excuse the failure to send a copy of the Plan, especially in light of the reference to the September 13th letter made by Minikes in his letter of September 19th. Consequently, the 30 day requirement of the statute has not been complied with.

■ Nevertheless, the court, in its discretion, will not award the damages provided for in ERISA, as there is no indication that plaintiff's rights under the Plan or ERISA have been prejudiced by the failure of the administrator to provide the Plan within the statutorily prescribed period. *Pollock v. Castrovinci*, 476 F.Supp. 606 (S.D.N.Y.1979). Plaintiff has not shown that he would have changed his plans and would not have retired in 1978 had he received a copy of the Plan within the 30 day period, or that failure to receive a copy in any way influenced his actions with respect to retirement.

Finally, we consider plaintiff's contention that the defendants have breached their fiduciary duty under section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), which provides in pertinent part:

"(a)(1) . . . [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonably expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) . . .

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter."

Plaintiff argues that section 404(a)(1) places an affirmative duty upon the trustees and administrator of the Plan to advise a participant as to the vesting requirements of the Plan and that the participant should take no action inconsistent with the requirements. Thus, plaintiff contends, once defendants had received the letter of September 13, 1978, from plaintiff's attorney advising that the attorney's client (not named in the letter) was "thinking of retiring" that year, defendants had an obligation to respond in a manner which at the very least would have alerted plaintiff that he needed ten consecutive years of covered employment in the industry in order for his pension benefits to vest. Plaintiff further asserts that defendants had an affirmative duty to alert plaintiff that his early employment in the industry was for a noncontributing employer. According to plaintiff, this latter duty arises as soon as it becomes apparent to the plan administrator that the technical requirements to Employer contributions of the Plan may operate to deny anticipated benefits to the participant.

■ This court rejects plaintiff's assertion that defendants have breached the fiduciary duty imposed by ERISA by their failure to so alert plaintiff. Section 404(a)(1) of ERISA imposes a duty to provide employees with a comprehensive explanation of the contents of the Plan. *Allen v. Atlantic Richfield Retirement Plan*, 480 F.Supp. 848, 851 (E.D.Pa.1979). This fiduciary obligation of section 404(a)(1) has been satisfied by publication of the Plan in the November 1977 issue of "Labor Unity—The Official Publication of the Amalgamated Clothing and Textile Workers Union" (D–8) which was distributed to all active union members at the time. *See, Id.* There is no duty on the part of defendants to provide this particular employee with individualized attention, as is urged by plaintiff. *Id.*

In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, the above memorandum opinion constitutes this court's Findings of Fact and Conclusions of Law.

### ORDER

Judgment is entered in favor of the defendants and against the plaintiff.

IT IS SO ORDERED.