**Alexander CURRY, Plaintiff,**

v.

**CONTRACT FABRICATORS INCORPORATED PROFIT SHARING PLAN, et al., Defendants.**

**Civ. A. No. 86–T–751–N.**

United States District Court,
M.D. Alabama, N.D.

March 18, 1988.

On Motion for Attorney Fees
June 1, 1988.

Theron Stokes, Kenneth L. Thomas, Massey, Means & Thomas, Montgomery, Ala., for plaintiff.

Thomas R. DeBray, Kaufman, Rothfeder & Blitz, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Alexander Curry has brought this lawsuit under the Employee Retirement Income Security Act (commonly known as ERISA), 29 U.S.C.A. §§ 1001–1461, against the following defendants: his former employer, Contract Fabricators, Inc.; the company profit sharing plan, Contract Fabricators Incorporated Profit Sharing Plan; and the company president, Victor M. Haber. Curry initially sought to recover pension benefits, compensatory damages for emotional and mental distress, punitive damages, civil penalties, and attorney fees. Since the filing of this lawsuit, Curry has received his pension benefits. The law is also now clear in this circuit that punitive damages are not available under ERISA, *Bishop v. Osborn Transportation, Inc.*, 838 F.2d 1173 (11th Cir.), *cert. denied*, 488 U.S. 832, 109 S.Ct. 90 (1988); and at trial Curry failed to present any evidence

establishing his entitlement to compensatory damages for emotional and mental distress.[1] The only issues remaining for resolution are therefore whether Curry is entitled to civil penalties and attorney fees. Based on the evidence presented at a non-jury trial, the court finds that Curry is entitled to $800 in civil penalties and an as yet undetermined amount in attorney fees, all from Contract Fabricators and Haber, individually and as president of the company.

## I.

Alexander Curry was employed for approximately 12 to 13 years by Contract Fabricators. During the last ten years of his employment, Curry was a member of the company's employee benefit plan. As established in 1971, the plan included a provision stating that a plan participant leaving employment with the company would be required to wait two years for pension benefits if the participant accepted employment with a competitor of the company within a 500 mile radius of Montgomery, Alabama. The plan was, however, amended in 1977 to delete the two-year waiting requirement and to give the plan administrator discretionary authority to refuse payment of employee pension benefits until the employee reaches the minimum retirement age of 65. The plan allows the administrator a maximum of 60 days following an employee's termination to determine if he will grant early benefits to the employee. Under the amended plan, the company is responsible for administering the plan; the company has in turn, however, appointed its president, Victor M. Haber, to serve as plan administrator.

In September of 1983, Curry decided to leave Contract Fabricators because he could not get along with his superintendent. His benefits in the plan had become vested. 29 U.S.C.A. § 1053. When Curry asked Haber about payment of his pension benefits, Haber told him that because he might go work for the "competition" he would have to wait two years to receive his benefits. As the plan administrator, Haber knew, however, that the amended plan contained no two-year waiting period if an employee went to work for a competitor, but left payment of benefits to his discretion. He had reviewed the 1977 amendments with the attorneys representing the plan prior to their adoption. After waiting the two-year period, Curry returned in mid-1985 to collect his benefits. Haber still refused to give Curry his benefits. Curry then sought legal assistance.

In mid-November 1985, Curry's attorney telephoned Haber and asked him why he had refused Curry's request for benefits. Haber told him that, under the profit sharing plan, Curry would have to wait until he was 65 because he had gone to work for a company competitor. Curry's attorney asked Haber to send him plan documents substantiating his reason. Haber agreed to send the information; he also referred Curry's attorney to the plan's accountant. Curry's attorney immediately called the plan's accountant, but the accountant refused to answer any questions because he had not received prior authorization from Haber to do so. Several days later, in late November, Curry's attorney wrote Haber a letter asking again for plan documents to support the reason Haber gave for not releasing benefits. The letter was not dated. Curry's attorney received neither the requested benefits nor the information, and therefore filed this lawsuit.

After this lawsuit was filed, Haber furnished the requested documents. Haber also tendered to Curry a claims form, which Curry filled out and returned; Haber then paid Curry his benefits. Curry is the only plan participant who has ever been denied benefits because he went to work for a competitor.

## II.

ERISA provides that an administrator who fails to furnish plan information to a

---

**1.** Indeed, it appears that Curry is not entitled to such compensatory damages as a matter of law. *See Sokol v. Bernstein,* 803 F.2d 532, 534 (9th Cir.1986); *cf. Massachusetts Mutual Life Insur-* *ance Company v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Bishop v. Osborn Transportation, Inc., supra.*

participant within 30 days after a request for such "may in the court's discretion be personally liable to such participant ... in the amount of up to $100 a day from the date of such failure." 29 U.S.C.A. 1132(c). The court is convinced by the evidence that Haber not only failed to comply with this provision, he failed to do so in bad faith.

The law is clear that ERISA permits a company executive to wear "two hats"; he may continue both as a company official and serve as plan administrator. 29 U.S. C.A. § 1108(c). But when a company official serving as a plan administrator engages in conduct on behalf of the plan he has the fiduciary duty to act exclusively for the benefit of the plan and its participants and beneficiaries, § 1104(a)(1)(A)(i); he abuses this duty if he acts for the benefit of his company and to the detriment of the plan or its participants. § 1106(b)(1); *see also Local Union 2134 v. Powhatan Fuel, Inc.*, 828 F.2d 710, 713 (11th Cir.1987).

The evidence reflects that Haber entered into a fraudulent scheme to use the profit sharing plan for the benefit of himself and his company and to single out and punish Curry, a plan participant: First, in 1983, in order to keep Curry from going to work for a business competitor, Haber knowingly and intentionally misrepresented to Curry that the plan prohibited payment of benefits for two years to any participant who went to work for a company competitor; Haber knew that this prohibition had been deleted when the plan was amended in 1977. Second, in 1985, after Curry had waited two years and had again requested his benefits, Haber again refused to give him his benefits because, as the court is convinced, Curry had worked for a competitor. Finally, in late 1985, when Curry's attorney requested Curry's benefits, Haber again knowingly and intentionally attempted to mislead the attorney into believing

that the plan prohibited Curry from receiving benefits until he was 65 because he had gone to work for a competitor. Haber's later failure to furnish Curry's attorney with requested plan information was not an innocent oversight, but rather was knowingly done in furtherance of his fraudulent scheme; his refusal to provide the information was an effort to cover-up his scheme.

Haber's conduct therefore warrants a civil penalty. His refusal to furnish the requested information was an intentional abuse of his fiduciary authority. *Frary v. Shorr Paper Products, Inc.*, 494 F.Supp. 565, 569 (N.D.Ill.1980). Because Haber refused to furnish the information for at least eight months—from the latter part of December 1985 (30 days after Curry's attorney requested the information in writing) until after this lawsuit was filed in August 1986—the court finds that a fine of $100 a month or $800 is appropriate. Furthermore, because Haber acted improperly for his and his company's own benefit, the fine should be paid by the company and by him, individually and as president of the company; the fine should not be paid by the profit sharing plan.[2]

Haber nevertheless argues that he was not obligated to furnish the information to Curry because Curry had not filed a claim for benefits. For reasons given later in this opinion, the court finds that Curry met the requirements for filing a claim when he first asked Haber for his benefits in 1983. But, in any event, a plan participant's right to information is not dependent on his having first filed a benefit claim. ERISA, in particular, 28 U.S.C.A. § 1024(b)(4), requires that a plan administrator provide a participant with, among other things, updated copies of documents describing the plan.[3] Section 1024(b)(4) does not condition this duty on the receipt of a benefit claim.

---

**2.** Haber and the company contended at trial that Curry should not have been allowed to pursue his civil penalty claim because it was not part of the complaint or pretrial order. The court believes that Curry should be allowed to pursue this claim because, first, the claim was fully litigated at trial, and Haber and his company have not shown how they have been unfairly prejudiced in their ability to present all relevant

evidence to the court; and second, the court strongly believes that Haber's conduct was so improper that it should not go without some censure. At issue here is the welfare of all plan participants and beneficiaries, not just Curry's.

**3.** Section 1024(b)(4) provides in part:
The administrator shall, upon written request of any participant or beneficiary, furnish a

■ Haber next argues that Curry's request for information "is not within the scope or contemplation of ... § 1132(c)." It is unclear whether Haber objects to the form of the request or objects to an attorney making the request on behalf of his client. Both objections lack merit. An attorney may request information on the behalf of a client who is a plan participant. *Porcellini v. Strassheim Printing Co. Inc.*, 578 F.Supp. 605, 611 (E.D.Pa.1983). Additionally, a request for information is sufficient if it provides the administrator with clear notice of the information requested. *Wesley v. Monsanto Co.*, 554 F.Supp. 93, 98 n. 6 (E.D.Mo.1982), *aff'd*, 710 F.2d 490 (8th Cir.1983). Curry's attorney submitted a written request for documents after Haber stated that he had documents supporting his claim that Curry was not entitled to benefits. Under the circumstances, Haber clearly understood that, at the very least, Curry's attorney was seeking a copy of the plan description.

Haber further contends that penalties should not be awarded under § 1132(c) because the request for information was undated. Although the lack of a date on the letter may affect the calculation of a penalty, it is not relevant to the validity of the request.

Haber argues further that Curry did not receive the documents because of his own attorney's inaction. Haber points out that Curry's attorney did not return to him for approval after the plan's accountant insisted that plan information could not be disclosed without Haber's consent. Curry's attorney was, however, under no duty to press the plan's accountant for information. As the plan administrator, Haber had the affirmative duty of providing accurate information to plan participants. Haber's fiduciary duty to act in the best interest of the plan participants could not be delegated to someone else. In any event, the court is convinced that Haber's referral of Curry's attorney to the plan accountant was intended as nothing more than a "stalling tactic,"

and was not a sincere effort to provide information.

■ Lastly, Haber maintains that a civil penalty should not be leveled against him because his failure to provide the requested documents did not prejudice Curry. Haber first argues that the information sought by Curry had previously been distributed to all plan participants. The court disagrees; the evidence reflects that Curry and other participants were not furnished with copies of the amended plan. Relying on *Shlomchik v. Retirement Plan of Amalgamated Ins. Fund*, 502 F.Supp. 240 (E.D.Pa.1980), *aff'd*, 671 F.2d 496 (3rd Cir.1981), Haber also argues that, because Curry eventually received his benefits, he was not prejudiced. Haber interprets *Shlomchik* as holding that without some showing of prejudice civil penalties are inappropriate. However, because § 1132(c) is punitive rather than compensatory in nature, this court sees no reason to condition its operation on prejudice; of course, reason dictates that lack of prejudice should be a factor considered in determining whether to impose a civil penalty. This court therefore rejects *Shlomchik* as interpreted by Haber, and, instead, adopts the holding set forth in *Porcellini v. Strassheim Printing Co., Inc.*, 578 F.Supp. at 614, where the court concluded that,

> Since the penalty provisions of Section 1132(c) are aimed at inducing administrators to comply promptly with requests for information about the plan, the primary focus of a court in assessing damages under that section should be the conduct of the administrator upon whom the liability is personally imposed. If a plan administrator in good faith is unable to comply with a request for information within the thirty (30) day period, the assessment of the statutory penalty would not further the statute's purpose. However, if an administrator intentionally withholds information, for whatever reason, where a proper request has been made, the assessment of the statutory

copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or

other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies.

penalty would be appropriate even though the participant or beneficiary cannot show prejudice arising therefrom. Where the delay in furnishing requested information is the result of neglect or misfeasance, then a court might consider an award of damages less severe than the $100.00 per day. Thus, an administrator who violates the express obligations imposed by statute should not be able to escape the statutory penalty merely because the plaintiff cannot prove harm.

*See also Bova v. American Cyanamid Co.*, 662 F.Supp. 483, 490 (S.D.Ohio 1987).

### III.

 Awarding attorney fees under ERISA, 29 U.S.C.A. § 1132(a), is discretionary. *Ironworkers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980). However, in exercising its discretion, a court must apply the following *Ironworkers* factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney fees; (3) whether an award of attorney fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party requesting attorney fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of each party's position. *Id.; see also Ironworkers Local No. 272 v. Bowen*, 695 F.2d 531, 534 (11th Cir.1983). Furthermore, should the court find that a fee is appropriate, it must then apply the following factors to determine a reasonable fee: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

### A.

Applying the *Ironworkers* factors, the court is convinced for reasons that follow that Curry is entitled to reasonable attorney fees from Haber and his company, but not from the profit sharing plan.

*Culpability and bad faith.* Curry has prevailed on two claims in this lawsuit, and has shown bad faith on the part of Haber as to both claims. First, as demonstrated in part II of this memorandum opinion, Haber not only improperly denied Curry information about the profit sharing plan, he did so in bad faith. And, second, as demonstrated below, Haber improperly and in bad faith denied Curry his pension benefits.

Under the profit sharing plan, Haber had the discretion in 1983, and again in 1985, to deny Curry his vested benefits until he reached 65. Haber did not have the discretion, however, to do so for his or his company's benefit and to single out and punish a plan participant or beneficiary; in other words, he could not discriminate against Curry for going to work for a competitor. *Frary v. Shorr Paper Products, Inc., supra.* The evidence is clear, however, that Haber knowingly and intentionally did just that; he entered into a fraudulent scheme to deny Curry his benefits as punishment. Haber therefore denied Curry his pension benefits for an improper reason and in bad faith.

Haber nevertheless argues that Curry is not entitled to attorney fees on his benefit claim because he did not prevail on that claim in court. First, Haber maintains that Curry could not have prevailed in this court because this court lacked jurisdiction over the benefit claim; more specifically, Haber points out that Curry failed to submit a "written" claim form for benefits, as required by the plan. Curry admits that he did not submit a claim form to Haber until

after this lawsuit was filed, but Curry further correctly argues that any failure on his part to comply with this requirement of the plan was not his fault, but Haber's.

■ The law is now clear in this circuit that claimants must first exhaust administrative remedies under the plan before resorting to court. *Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir. 1985) ("imposing an exhaustion requirement in the ERISA context appears to be consistent with the intent of Congress that pension plans provide intrafund review procedures"), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). However, exhaustion of administrative remedies is excused if resort to the procedures would be futile, *see Glover v. St. Louis–San Francisco Railway Co.,* 393 U.S. 324, 330–31, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969), or if the claimant is "wrongfully denied meaningful access" to the administrative procedures. *Lieske v. Morlock,* 570 F.Supp. 1426, 1429 (N.D.Ill.1983); *see also Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

■ The facts are clear here that when Curry approached Haber about his pension benefits, Haber intentionally misled Curry into not filing a claim for benefits by misinforming him that he could not get benefits if he was going to work for a company competitor. The facts are also clear that, as a part of his fraudulent scheme, Haber never informed Curry that he needed to file a written claim, nor did Haber give Curry one of the blank claim forms claimants may use to file claims. Curry's failure to file a written claim was therefore due to Haber's fraudulent conduct, not to Curry's conduct. Haber therefore effectively denied Curry access to the plan procedure for obtaining benefits. Haber cannot engage in conduct that effectively thwarts a claimant's efforts to do what is necessary to receive benefits, and then use the claimant's failure as his own defense.[4]

■ Haber also argues that Curry did not prevail on his benefit claim because Curry received his benefits without action from this court. The court again disagrees. The law in this circuit is that a plaintiff is a prevailing party entitled to attorney fees under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C.A. § 1988, and the Equal Access to Justice Act, 28 U.S.C.A. § 2412, if the plaintiff's lawsuit "was a catalyst motivating defendants to provide the primary relief sought in a manner desired by litigation." *Martin v. Heckler,* 773 F.2d 1145, 1149 (11th Cir. 1985) (en banc), *quoting Robinson v. Kimbrough,* 652 F.2d 458, 465 (5th Cir.1981). The court believes that this same reasoning should apply to requests for attorney fees under ERISA. The evidence is clear here that this lawsuit was the catalyst behind Haber's decision finally to give Curry his benefits. With his lawsuit, Curry effectively exposed Haber's fraudulent scheme, and Haber then realized that he had no choice under the law but to award Curry his benefits. But for this lawsuit, Curry would still be without his benefits.

■ *Ability to satisfy judgment.* Because Haber was acting in bad faith and primarily on behalf of himself and his company when he denied Curry his benefits and information about the plan, Haber and his company should be liable for attorney fees, not the plan. *See Iron Workers Local No. 272 v. Bowen,* 695 F.2d at 534 n. 4; *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1356 (8th Cir.1980). There is no evidence that Haber and his company cannot afford a reasonable attorney fee.

*Common benefit and deterence.* The evidence reflects that Haber was abusing his position as plan administrator to further the goals of his company. With this lawsuit, Curry has not only benefited himself, he has benefited all plan participants and beneficiaries: He has finally impressed upon Haber that when acting as plan administrator his exclusive fidelity lies with

---

**4.** Haber's contention that Curry was denied benefits because he failed to file a "written" request is disingenuous and pretextual. But for his desire to punish Curry for working for a competitor, Haber would have given Curry his benefits or, at least, would have given Curry the blank form on which to request benefits.

the plan and its participants and beneficiaries. Curry's lawsuit will also undoubtedly deter other plan administrators from engaging in fraudulent conduct.

*Relative merits of the parties' positions.* The court has already demonstrated how Haber's conduct was not only improper, it constituted bad faith. Curry's claims were clearly meritorious.

### B.

The court cannot apply the *Johnson* factors at this time. Although Curry has submitted affidavits in support of his attorney fee request, Haber has asked that he and his company be allowed to submit additional, live evidence. The court will therefore set the issue of attorney fees for an evidentiary hearing. However, to assist the parties in their settlement discussion regarding attorney fees, the court makes the following comments. The court does not consider Curry's limited financial recovery of $2,701.01 in pension benefits and $800 in civil penalties as an absolute limit on how much Curry's attorney should recover in fees and expenses. As previously stated, Curry has done much more than vindicate his own rights under ERISA; he has brought to light, and hopefully also brought to an end, a fraudulent practice which threatened all participants and beneficiaries with vested benefits under the plan. *See City of Riverside v. Rivera,* 477 U.S. 561, 578–79, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986) (attorney fee award may reflect not only specific individual relief obtained but also any broad social benefit that may indirectly result from litigation); *Sokol v. Bernstein,* 812 F.2d 559 (9th Cir. 1987) (total fees awarded in trial court and on appeal substantially exceeded the small benefit recovered under ERISA). Furthermore, ERISA law is extremely complex and substantially still unsettled. It is almost essential that claimants have the assistance of attorneys willing to spend many hours researching their way through this legal forest. Undoubtedly, many claimants have small claims, and, if the fees for their attorneys are limited by the size of their claims, these claimants will have been effectively denied legal assistance. But most impor-

tantly here, Curry's attorney had to spend extra hours on this case because Haber not only failed to live up to his fiduciary responsibilities under ERISA, he also intentionally abused his office and even entered into a scheme to cover-up his abuse. If the fees incurred by Curry's attorneys are high, the fault is with Haber, not with Curry.

On the other hand, Curry has yet to address Haber's factual and legal contention that any award of attorney fees must be limited by the alleged 30% contingency agreement between Curry and his attorneys. There is established law on this issue, and Curry needs to file a brief addressing the issue before the evidentiary hearing.

DONE.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That judgment be and it is hereby entered in favor of plaintiff Alexander Curry and against defendants Contract Fabricators, Inc. and Victor M. Haber, individually and as president of Contract Fabricators, Inc, on plaintiff Curry's civil penalty claim and attorney fees claim;

(2) That plaintiff Curry have and recover from defendants Contract Fabricators, Inc. and Victor M. Haber, individually and as president of Contract Fabricators, Inc., the sum of Eight Hundred and NO/100 Dollars ($800.00) as a civil penalty;

(3) That the issue of the amount of attorney fees be and it is hereby set for a further evidentiary hearing on April 14, 1988, at 2:00 p.m. in the second floor courtroom of the federal courthouse in Montgomery, Alabama; and

(4) That all other relief requested by plaintiff Curry be and it is hereby denied.

It is further ORDERED that costs be and they are hereby taxed against defendants Contract Fabricators, Inc. and Victor M. Haber, individually and as president of

Contract Fabricators, Inc., for which execution may issue.

DONE.

## ON MOTION FOR ATTORNEY FEES

Plaintiff Alexander Curry filed this lawsuit under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001–1461. He sued his former employer, Contract Fabricators, Inc.; the company president, Victor M. Haber, and the company profit sharing plan, Contract Fabricators Incorporated Profit Sharing Plan. This cause is now before the court on Curry's motion seeking as much as $82,218.64 for attorney fees and costs from Haber and the company.[1] 29 U.S.C.A. § 1132(g). For reasons that follow, the court concludes that Curry is entitled to $16,494.17 as attorney fees and costs.

### I.

In a memorandum opinion and judgment entered on March 18, 1988, this court held that Haber and the profit sharing plan improperly denied Curry his pension benefits, and further improperly withheld from him information about the profit sharing plan, all in violation of ERISA.[2] The court further found, after applying the factors in *Ironworkers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980), that Curry is entitled to reasonable attorney fees and costs. The court concluded, however, that only Haber, individually, and his company should be liable for any damages, attorney fees, and costs.

The court will determine what constitutes a reasonable fee in accordance with the 12 factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). These factors are:

the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee in the community; whether the fee is fixed or contingent; time limitations imposed by the client or circumstances; the amount involved and the results obtained; the experience, reputation, and the ability of the attorney; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

The number of hours reasonably expended to prosecute the lawsuit and the prevailing market rate provide an important starting point for any fee determination. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). In making its fee award, the court will therefore start by determining: (a) the number of hours reasonably devoted to this litigation; and (b) the prevailing market rate for work performed by similarly situated attorneys in similar cases in the community. The product of these two figures will provide the court with a "lodestar" figure. The court will then determine whether any portion of this lodestar fee should be adjusted upwards or downwards. *Id.* at 434, 103 S.Ct. at 1040.

### A. Reasonable Hours

Curry was represented by Theron Stokes and Kenneth L. Thomas. Stokes claims 244.7 hours and Thomas claims 70 hours.[3] The court believes that, under the special circumstances presented here, these hours are reasonable.

1. Curry seeks $79,690.94 for attorney fees and $2,527.70 for expenses. *See* Amended Motion, filed on April 25, 1988.

2. Defendants argued again at the hearing on attorney fees that Curry should be faulted for not filing a *written* claim as required by the company plan. In addition to the reasons given in the March 18 memorandum opinion, the court states: ERISA regulations do not require that a claim be in writing; only the company plan here required such. But Haber never gave Curry a copy of the company plan, and he specifically refused to give Curry's attorney a copy. Under the circumstances, Curry cannot be faulted for failing to comply with the plan's requirement. Curry was unaware of the requirement due to Haber's efforts to keep him ignorant of the plan's contents and of his rights under the plan.

3. The hours claimed include time spent on the issue of attorney fees.

The court has considered two *Johnson* factors—the novelty and difficulty of the case and the amount involved and the results obtained—in assessing the reasonableness of the hours claimed.[4] ERISA law is, in general, extremely complex and unsettled; moreover, this case presented several issues of unsettled law. Stokes and Thomas were nevertheless able to obtain most of the relief they sought.

The parties hotly disputed whether Curry entered into an agreement to pay his attorneys a percentage of his damages recovery, which agreement would limit his attorneys' recovery in this court. In *Johnson v. Georgia Highway Express, Inc.*, the court stated that, "In no event ... should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount," 488 F.2d at 718, and the Eleventh Circuit recently commented that "*Johnson* is controlling precedent on [this] point." *Pharr v. Housing Authority of City of Prichard*, 704 F.2d 1216, 1218 (11th Cir.1983).[5] The evidence reflects that when Curry's attorneys viewed his case as one arising under state law only, they initially did have an agreement limiting the amount of recoverable attorney fees. However, when ERISA entered the picture, Curry and his attorneys scuttled the initial agreement, and they agreed that fees would be pursued under ERISA exclusively. The initial agreement is therefore not controlling.

The court also recognizes that Curry's attorneys were completely inexperienced in ERISA law when they took this case. The court believes that this inexperience should be reflected in the approved hourly rate, rather than in the number of hours approved. In other words, the court believes the number of hours claimed is reasonable for such inexperienced attorneys.

The court finally recognizes that Curry's financial recovery was only $3,501.01. However, while the amount of damages a plaintiff recovers is certainly relevant, attorney fees need not be limited to a portion of the damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *Hensley v. Eckerhart, supra*. As this court stated in its memorandum opinion of March 18,

> The court does not consider Curry's limited financial recovery ... as an absolute limit on how much Curry's attorney should recover in fees and expenses. As previously stated, Curry has done much more than vindicate his own rights under ERISA; he has brought to light, and hopefully also brought to an end, a fraudulent practice which threatened all participants and beneficiaries with vested benefits under the plan. *See City of Riverside v. Rivera*, 477 U.S. 561, 578–79, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986) (attorney fee award may reflect not only specific individual relief obtained but also any broad societal benefit that may indirectly result from litigation); *Sokol v. Bernstein*, 812 F.2d 559 (9th Cir.1983) (total fees awarded in trial court and on appeal substantially exceeded the small benefit recovered under ERISA). Furthermore, ERISA law is extremely complex and substantially still unsettled. It is almost essential that claimants have the assistance of attorneys willing to spend many hours researching their way through this legal forest. Undoubtedly, many claimants have small claims, and, if the fees for their attorneys are limited by the size of their claims, these claimants will have been effectively denied legal assistance. But most importantly here, Curry's attorney had to spend extra hours on this case because Haber not only failed to live up to his fiduciary responsibilities under

---

**4.** The initial calculation of reasonable hours at the prevailing market rate will often subsume many of the other *Johnson* factors. *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

**5.** The circuit courts are not in agreement on this issue, and several have held that a fee contract

is not necessarily a ceiling on the amount of an award in a civil rights action. *See Cooper v. Singer*, 719 F.2d 1496, 1500 n. 7 (10th Cir.1983) (en banc) (citing cases that have considered effect of fee agreement on award to attorney).

ERISA, he also intentionally abused his office and even entered into a scheme to cover-up his abuse. If the fees incurred by Curry's attorneys are high, the fault is with Haber, not with Curry.

Applying the principles of *City of Riverside* and *Hensley*, the court believes that the fee award should not be proportional to the monetary recovery, but that it should nevertheless be reduced by 50% to reflect the limited recovery. *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) (reduction of fee to reflect limited recovery allowable under *City of Riverside*).

The court will therefore allow Curry's attorneys to recover for the following hours:

| Attorney | Hours |
| --- | --- |
| Stokes | 122.35 |
| Thomas | 35.00 |

### B. Prevailing Market Rate

To determine the prevailing market rate the court will consider the following *Johnson* factors: customary fee; skill required to perform the legal services properly; the experience, reputation and ability of the attorney; time limitations; preclusion of other employment; undesirability of the case; nature and length of professional relationship with the client; and awards in similar cases.

*Customary Fee.* Because there are so few attorneys in Alabama who practice ERISA law and because there are so few ERISA cases, there is little evidence to be found of a customary fee. However, it appears that in the legal market in general inexperienced attorneys receive $60 an hour while the more experienced receive as much as $150 or more.

*Skill Required to Perform the Legal Services Properly.* The work product of Curry's attorneys was adequate, considering their admitted initial unfamiliarity with ERISA law.

█ *Experience, Reputation, and Ability of the Attorneys.* Stokes has been practicing law since 1981, and Thomas since 1977. Stokes and Thomas are well-respected and able civil rights lawyers. However, because this was their first ERISA case they have no reputation as ERISA lawyers.

*Time Limitations.* This factor requires "some premium" where there has been "[p]riority work that delays the lawyer's other legal work." *Johnson*, 488 F.2d at 718. There is no evidence of such limitations here.

*Preclusion of Other Employment.* This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. There is no substantial evidence of this.

*Undesirability of Case.* There is no evidence that ERISA cases are undesirable.

*Nature and Length of Relationship with Client.* Stokes and Thomas had no prior professional relationship with Curry.

*Awards in Similar Cases.* The parties did not submit any cases, reported or unreported, awarding fees in ERISA cases.

Based on these criteria, the court is of the opinion that the following hourly fees for Curry's counsel reasonably reflect the prevailing market rate for non-contingent work performed by attorneys of similar experience in similar cases:

| | |
| --- | --- |
| Stokes | $60/hour |
| Thomas | $60/hour |

The court has selected a fee on the low side because Curry's attorneys were inexperienced in ERISA law, and, as is apparent from the number of hours claimed, much of their time was spent familiarizing themselves with ERISA.

█ In setting the appropriate market rate, the court has compensated for delay in payment by basing the award on current rates. A court may recognize the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value. *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1210–11 (11th Cir.), *cert. denied*, 464

U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983).

## C. Lodestar Calculation

The unadjusted lodestar figure for each attorney consists of the product of the attorney's compensable hours times his prevailing market fee. The lodestar figure for each of the attorneys is as follows:

| Attorney | Hours | Rate | Total |
|----------|-------|------|-------|
| Stokes | 122.35 | $60 | $7,341.00 |
| Thomas | 35.00 | 60 | 2,100.00 |
| | | Total Fees | $9,441.00 |

## D. Adjustment

Eleven of the *Johnson* factors were examined above. Factor six, whether the fee is fixed or contingent, was not examined.

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), a majority of the United States Supreme Court held that attorney fees may be enhanced due to contingency of payment. *See* 483 U.S. at 731, 107 S.Ct. at 3089 (O'Connor, J., concurring); 483 U.S. at 735, 107 S.Ct. at 3091 (Blackmun, J., with whom Brennan, Marshall and Stevens, JJ., join, dissenting). There, the district court had enhanced a fee award focusing on the novelty and risk of the litigation. A four-person plurality reversed, holding that enhancement based on risk was appropriate in only "exceptional cases." *Id.* at 728, 107 S.Ct. at 3088 (White, J., plurality opinion). Justice O'Connor provided the critical fifth vote for the judgment of the Court, agreeing with the plurality that a fee was inappropriate in the case before the Court, but agreeing with the dissenters that a fee enhancement is not inappropriate generally. Because she was more restrictive than the dissenters in her approach as to when enhancement is appropriate, one should look primarily to her opinion to determine when a fee should be enhanced. *Catlett v. Missouri Highway and Transportation Commission*, 828 F.2d 1260, 1271 (8th Cir. 1987); *Crumbaker v. Merit Systems Protection Board*, 827 F.2d 761 (Fed.Cir.1987); *Save Our Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 53 (D.C.Cir.1987).

Justice O'Conner wrote that "compensation for contingency must be based on the difference in market treatment of contingent fee cases *as a class*, rather than on an assessment of the 'riskiness' of any particular case." 483 U.S. at 731, 107 S.Ct. at 3089 (emphasis in original). She further stated that certain circumstances had to exist before a fee enhancement was appropriate. *Id.* at 733, 107 S.Ct. at 3090–91. Specifically, it is the fee applicant's burden to prove the degree to which the relevant market compensates for contingency. *Id.* at 733, 107 S.Ct. at 3090. Also, "a court may not enhance a fee award any more than is necessary to bring the fee within the range that would attract competent counsel," and no enhancement is appropriate unless without it "the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Id.* at 733, 107 S.Ct. at 3091, *quoting id.* at 731, 107 S.Ct. at 3089 (plurality opinion).

The circumstances necessary for a fee enhancement exist in this case. First of all, Curry's attorneys took this case on a contingency fee basis because Curry was unable to pay their fees and expenses. Secondly, lawyers in Alabama are definitely compensated for taking cases on a contingency basis. The market principle in this state is that lawyers who are to be compensated only in the event of victory expect and "are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.) (en banc), cert. dismissed, 453 U.S. 950, 102 S.Ct. 27 (1981). Thirdly, lawyers in Alabama who take cases on a contingency basis are very highly compensated for taking the risk that they will be paid only in the event of success. The evidence here reflects that at least a 67% enhancement would bring ERISA cases within the range that would attract competent counsel. Without this enhancement, the evidence reflects that attorneys would not take cases of ERISA's complexity.

Accordingly, the fees for Curry's attorneys are enhanced as follows:

| Attorney | Fee |
|----------|-----|
| Stokes | $12,259.47 |
| Thomas | 3,507.00 |
| Total Fees | $15,766.47 |

### II. EXPENSES

In addition to fees, Curry's attorneys seek an award of $2,527.70 for expenses. All of the expenses claimed appear to be allowable and reasonable, except $1,800 for expert witness testimony, which is not allowable. *See Glenn v. General Motors Corporation*, 841 F.2d 1567 (11th Cir.1988). Accordingly, the court concludes that Curry's attorneys may recover only $727.70 of the expenses they claim.[6]

### III.

In conclusion, the court holds that Curry is entitled to $15,766.47 for attorney fees and $727.70 for expenses, for a total of $16,494.17.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That plaintiff Alexander Curry's motion for attorney fees and costs, filed April 1, 1987, and amended April 13 and 25, 1988, be and it is hereby granted; and

(2) That plaintiff Curry have and recover from defendants Contract Fabricators, Inc. and Victor M. Haber, individually and as president of Contract Fabricators, Inc., the sum of $16,494.17 for attorney fees and expenses.

DONE.

---

**6.** Curry may recover only $30.00 for his expert witness. The court assumes that this $30 is already included in the allowed $727.70. If it is not, then Curry is entitled to an additional $30, and he may seek, within seven days, to have this order amended to reflect the same.