Terry BOWEN, et al., Plaintiffs,

v.

SOUTHTRUST BANK OF ALABAMA, etc., et al., Defendants.

Civ. A. No. 87–T–1149–N.

United States District Court,
M.D. Alabama, N.D.

Feb. 13, 1991.

George L. Beck, Jr., W. Terry Travis, Montgomery, Ala., for Bowen, DeBardelaben, Hughes, Black, Stringfellow, Hodge and Smoot.

Jim Hampton, Montgomery, Ala., for plaintiffs.

James Huckaby, Jr., Charles A. McCallum, III, Haskell, Slaughter & Young, Birmingham, Ala., for intervenor Alabama Life and Disability Ins. Guar. Ass'n.

F.A. Flowers, III, Robert G. Tate and A. Brand Walton, Jr., Burr & Rorman, Birmingham, Ala., for SouthTrust Bank, Southeastern Independent Business Ass'n, etc., Associated Associations, etc., Ass'n of Public and Private Employers, etc., and Caraway.

James Jerry Wood, Wood & Parnell, Montgomery, Ala., for George H. Jones.

Thomas Gallion, Constance Caldwell, Montgomery, Ala., for Receiver of Nat. Union Life Ins. Co. re settlement proceedings.

## AMENDED ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiffs Terry Bowen, Toni DeBardelaben, and Hazel Hayes brought this action on behalf of themselves and a class of participants in several employee health insurance plans, charging that the plans' trustee, SouthTrust Bank of Alabama, the plans' insurer, National Union Life Insurance Company, and other named defendants violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001–1461, by allowing the plans to become insolvent and thus unable to pay plaintiffs' medical bills.[1] The parties have

---

1. The three defendant plans, represented in the lawsuit by SouthTrust, were the Southeastern Independent Business Association Healthy Benefit Group Trust, the Associated Associations Health Benefit Group Trust, and the Association of Public and Private Employers Health Group Trust. Plaintiffs also named as defendants George Carroway, the SouthTrust official who acted on behalf of the bank as trustee of the plans; Associations Management Services, Inc., which administered the plans; and George Jones, the owner of Associations Management

proposed a class settlement according to which defendants have contributed approximately $1 million to a fund which would be used to compensate plaintiffs and their creditor medical providers. The agreement also provides that plaintiffs' counsel, George Beck, shall be awarded an unspecified, reasonable attorney's fee from the settlement fund, the exact amount to be determined by the court. Although the court has not yet approved the settlement, the case is now before it on a motion by Beck seeking $380,498.59 in attorney's fees and costs. For the reasons set forth below, the court concludes that Beck is entitled to $238,375.80 as attorney's fees and $37,508.59 as costs, for a total sum of $275,884.39, conditioned on the court's approval of the overall class settlement.

## I.

Plaintiffs filed this lawsuit in October 1987. In May 1988, the court certified three plaintiff classes, consisting of all members of each of the three defendant health insurance plans who were due claims or benefits as a result of their participation in the plans. The case was tried without a jury in July 1989. However, before the court could render a verdict, the parties agreed to settle the lawsuit. According to the proposed settlement, SouthTrust has paid into the registry of the court $361,375.00 in addition to the $227,906.40 still held by the bank as trustee for the insolvent plans, and the receiver for

National Union Life has in turn contributed $400,000. With accumulated interest, the fund created from these payments now amounts to, $1,035,372.86, as of February 1, 1991. The settlement calls for this money to be distributed on a pro rata basis to plaintiffs and to those medical providers with outstanding claims against plaintiffs who agree to accept the stipulated amount as full satisfaction of such claims. As part of the settlement, SouthTrust has also agreed to bear the administrative expenses associated with providing notice to class members, distributing monies from the fund, and otherwise implementing the settlement. Although it has not yet approved the settlement, the court has permitted the parties to send notices to class members and their medical providers informing them of the proposed settlement and offering them the opportunity to accept or opt out of it.

The settlement also seeks to resolve partially the issue of attorney's fees, by providing that plaintiffs' counsel shall not ask the court "for more than 33⅓% plus payment of out-of-pocket expenses as a reasonable attorney's fee," to be deducted from "the total amount paid into the Court." [2] Accordingly, in November 1990, plaintiffs' counsel George Beck filed a motion for attorney's fees and costs. Beck seeks $342,990.00 in fees, amounting to roughly one-third of the settlement fund, and requests reimbursement for costs in the amount of $37,508.59.[3] Beck has also submitted contemporaneous time sheets indi-

---

and principal shareholder in National Union Life. The court subsequently dismissed Associations Management as well as two other defendants, Fringe Benefit Plans, Inc. and Pharmaceutical Association Health Benefit Group Trust, and permitted the Alabama Life and Disability Insurance Guaranty Association to intervene on the side of the plaintiffs.

**2.** The relevant paragraph reads:

Attorneys for the classes, based upon hours expended, risk of litigation and other factors normally considered by a Court in awarding attorney's fees, and anticipated future hours to be expended in order to perfect this settlement, anticipate that a reasonable attorney's fee would be somewhere between 33⅓% and 40% of the total amount paid into Court. However, in order to facilitate settlement, the

attorney for plaintiff classes informs the Court that he will not ask for more than 33⅓% plus payment of out-of-pocket expenses as a reasonable attorney's fee. Assuming that the Court awards the full amount requested, there will be sufficient funds to pay medical providers or claimants for claims in a range of twenty-eight cents on the dollar. This return compares favorably to net collections by medical care providers on three to five year old accounts.

*See* Joint Proposed Settlement, filed on February 21, 1990, at 2.

**3.** Each of the three named plaintiffs reached contingent fee agreements with Beck, promising him 40% of any money obtained through this litigation. Beck has submitted affidavits from these named plaintiffs in support of the amount of his fee request.

cating that he has devoted a total of 951.6 hours to this lawsuit. SouthTrust and the plans have neither disputed Beck's entitlement to attorney's fees and costs nor questioned the reasonableness of the number of hours he has expended on the litigation; however, they have objected to the amount of his fee request. According to defendants, Beck's fee should be calculated using an hourly-rate or "lodestar" approach, according to which he should be compensated at a rate of $150 an hour for in-court time and $100 an hour for out-of-court time, yielding a total fee of approximately $114,000.[4] In the alternative, defendants contend that if Beck's fee is to be figured as a percentage of the economic benefit that he has created for class members, he should receive only 30% of the funds contributed by SouthTrust, because the monies paid by the plans themselves and the insurer, National Union Life, were available to plaintiffs prior to the litigation. Such an approach would entitle Beck to a fee of approximately $168,000.[5] In response, Beck insists that the entire $1,035,372.86 fund as well as additional economic benefits obtained for the class are attributable to his efforts, and argues that even under an hourly-rate formula, his "lodestar" fee, properly "enhanced" or "multiplied," would result in a fee equal to or greater than the $342,990.00 that he has requested.[6]

**4.** Defendants have not indicated how they divided the hours claimed by Beck into in-court and out-of-court time in order to arrive at this total figure. Moreover, while defendants contend that this total fee should not be subject to a "multiplier," they argue that if a multiplier is applied, it should not exceed 1.6, resulting in a total fee of approximately $182,400.00.

**5.** According to SouthTrust, its contribution to the fund consisted of the $361,375.00 that it paid to the court, plus the approximately $200,000 expense of implementing the settlement, for a total of $561,375.00.

**6.** Beck argues that in figuring the common benefit he has bestowed upon the class, the court should include the entire amount of the fund, because the money held by SouthTrust on behalf of the plans and the money later contributed by the receiver for National Union Life had not been pooled or paid to class members when the litigation began, and would likely have been depleted if not for his efforts. Beck also con-

## II.

### A.

■ It is well settled that the parties to a lawsuit may negotiate a settlement according to which the defendant makes a lump-sum payment embracing both monetary relief to the plaintiff and attorney's fees liability. *See Evans v. Jeff D.*, 475 U.S. 717, 733, 106 S.Ct. 1531, 1540, 89 L.Ed.2d 747 (1986), *quoting Marek v. Chesny*, 473 U.S. 1, 6–7, 105 S.Ct. 3012, 3015, 87 L.Ed.2d 1 (1985) (enabling defendants to pre-determine total liability encourages settlement); *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 453 n. 15, 102 S.Ct. 1162, 1167 n. 15, 71 L.Ed.2d 325 (1982) (same).[7] However, as with any settlement in a class action, such an agreement is subject to the approval of the district court. *See* Fed.R.Civ.P. 23(e). In determining whether plaintiffs' counsel is in fact entitled to fees, and if so, in what amount, the court must be sensitive to the potential conflict of interest between plaintiffs and their counsel, and must be particularly careful to insure that the ultimate division of settlement funds is fair to absent class members. *See Piambino v. Bailey ("Piambino I")*, 610 F.2d 1306, 1328 (5th Cir.1980); *Parker v. Anderson*, 667 F.2d 1204, 1213–14 (5th Cir.), *cert. de-*

tends that in determining his fee, the court should also award him a percentage of the approximately $200,000 in administrative expenses which the settlement requires SouthTrust to pay, and the $2.45 million in total claims by medical providers against plaintiffs, which the settlement effectively extinguishes.

**7.** A lump-sum or other settlement in which plaintiff's counsel waives the right to seek fees from the defendant later, *see Evans*, 475 U.S. at 1540, 106 S.Ct. at 1541, should be distinguished, however, from one in which the parties negotiate a specific attorney's fee. The latter raises the possibility of a "sweetheart deal," in which plaintiff's counsel may be tempted to accept a smaller settlement for his client in return for an excessive fee. *See Piambino v. Bailey ("Piambino I")*, 610 F.2d 1306, 1328 (5th Cir.1980); *Moore v. Nat'l Ass'n of Securities Dealers, Inc.*, 762 F.2d 1093, 1103 (D.C.Cir.1985) (Opinion of MacKinnon, J.); *Parker v. Anderson*, 667 F.2d 1204, 1213–14 (5th Cir.), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

*nied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). The device of a lump-sum settlement is normally used in class action cases governed by a fee-shifting statute which, if the plaintiffs were to prevail at trial, might permit them to obtain substantial fees directly from the defendant in addition to the amount of any judgment. *See County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1327 (2nd Cir.1990); *Skelton v. General Motors Corp.,* 860 F.2d 250, 254–55 (7th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *Parker,* 667 F.2d at 1213–14. Had the court rendered a verdict in favor of plaintiffs in this case, they would have been eligible to seek attorney's fees from South-Trust and the other defendants pursuant to ERISA's fee provision. 29 U.S.C.A. § 1132(g)(1) ("In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party").[8]

■■■ A settlement like the one reached here has the effect of converting a statutory fee case into one in which plaintiffs' attorney must seek compensation from the common fund created by the agreement. *See Long Island Lighting Co.,* 907 F.2d at 1327; *Skelton,* 860 F.2d at 254–55; *Parker,* 667 F.2d at 1213–14. The right of an attorney to petition a court for fees to be paid from a common fund represents an ancient and well established equitable exception to the traditional principle of American law that each litigant must bear his or

her own attorney's fees. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975).[9] This doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." [10] *Boeing,* 444 U.S. at 478, 100 S.Ct. at 749. *See In re Fox,* 725 F.2d 661, 663 (11th Cir.1984). Thus, unlike statutory attorney's fees, which shift the fee burden to the losing party, common fund fees share or spread this obligation among those benefited by the litigation. *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir.1989); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *Bebchick v. Washington Metro Area Transit Com'n,* 805 F.2d 396, 402 (D.C.Cir.1986). Even in cases in which no statute entitles plaintiffs' counsel to seek fees from a losing defendant, the lawyer may obtain fees from the monetary relief awarded a plaintiff class by virtue of a settlement or judgment, if his efforts can be said to have "bestowed a 'common benefit' on [the] class or protected a 'common fund,'" *Fox,* 725 F.2d at 663. *See also* Newburg, Attorney Fee Awards, § 2.01, at 22–30 (1986). Putting aside, for the moment, the issue of the exact amount of the fund in this case which is attributable to attorney Beck's efforts, it is clear that his

---

**8.** Because it provides that plaintiffs' counsel must look to the settlement fund for payment of any attorney's fees, the settlement agreement in this case, if approved by the court, would bar plaintiffs or their counsel from seeking fees directly from defendants under ERISA, 29 U.S.C.A. § 1132(g)(1). *See Evans,* 475 U.S. at 1540, 106 S.Ct. at 1541. However, as the court discusses below in more detail, *see* note 13 and accompanying text, *infra,* it expresses no opinion as to whether defendants could also require plaintiffs' counsel to seek fees only from the fund, if the settlement did not address the issue of fees, or, instead of settling the case, plaintiffs had obtained a money judgment resulting in the creation of such a fund. *But see Eaves v. Penn,* 587 F.2d 453, 464 (10th Cir.1978) (where judgment in ERISA case results in common fund, district court may determine whether common

fund theory should apply or whether, instead, attorney's fees should be assessed directly against breaching fiduciaries).

**9.** *See also Mashburn v. National Healthcare, Inc.,* 684 F.Supp. 679, 686–87 (M.D.Ala.1988); Newburg, Attorney Fee Awards, § 2.01, at 22–30 (1986); Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 255 (1985).

**10.** In this case, as in most class actions, the named plaintiffs had contracted with their attorney to pay him a contingent fee. Although the absent class members obtain the same benefit from the settlement in this case as do the named plaintiffs, they of course have assumed no such independent fee obligation to plaintiffs' counsel.

litigation of this action has bestowed a common benefit on the class and created a common fund for the absent members.

▪ However, when a lawsuit is initiated under a statute governed by a fee-shifting provision and is settled with the creation of a common fund, the question arises whether statutory fee or common fund principles should govern the award of attorney's fees. The choice between these two approaches is important for two reasons. First, a number of fee-shifting statutes, including § 1132(g)(1) of ERISA, permit awards only under certain limited circumstances which may not be satisfied even where, as in this case, an attorney has clearly bestowed a common benefit or protected a common fund. *See Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980) (5–factor test for determining when prevailing party is entitled to recover fees under ERISA). Second, the case law governing fee awards under most statutes, again, including ERISA, normally requires that a lawyer be compensated based on a reasonable hourly rate, rather than as a percentage of recovery, while a number of courts have held that the latter approach is permissible in common fund cases.[11]

Several circuits have held that even in cases arising under fee-shifting statutes, where otherwise appropriate, fees should ordinarily be determined according to common fund doctrine. *See Long Island Lighting Co.*, 907 F.2d at 1327 ("fee-shifting statutes are generally not intended to circumscribe the operation of the equitable fund doctrine"); *Skelton*, 860 F.2d at 254–55; *Parker*, 667 F.2d at 1213–14; Report of the Third Circuit Task Force, Court Award-

ed Attorney Fees, 108 F.R.D. 237, 255 (1985) (recommending similar treatment of "traditional common-fund [cases] and those statutory fee cases that … result in a settlement fund from which adequate counsel fees can be paid").[12] One exception to this rule is where "under a particular combination of facts, the operation of the equitable fund doctrine conflicts with an intended purpose of a relevant fee-shifting statute." *Long Island Lighting Co.*, 907 F.2d at 1327. In such a situation, "the statute must control and the doctrine must be deemed abrogated to the extent necessary to give full effect to the statute." *Id.* After carefully examining the terms of the settlement in this case and considering the purposes of ERISA's fee-shifting provision, 29 U.S.C.A. § 1132(g)(1), the court concludes that application of common fund principles to determine attorney Beck's entitlement to fees would in no way conflict with the goals of this section of ERISA. Because the settlement agreement explicitly provides that the money paid by defendants includes an unspecified sum for attorney's fees, an award of fees from this fund would not be inconsistent with Congress's intention that, in ERISA cases, "the offending party bear the costs of the award rather than … plan participants." *Eaves v. Penn*, 587 F.2d 453, 464 (10th Cir.1978).[13] Nor would an assessment of fees from the settlement fund in this case conflict with the policy, underlying § 1132(g)(1), of providing both prospective plaintiffs and their attorneys an economic incentive to bring meritorious ERISA cases. *See Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1265–66 (5th Cir.1980). *See also* Note, At-

---

**11.** *See* section II(B) of the court's opinion.

**12.** *See also Eaves v. Penn*, 587 F.2d 453, 464 (10th Cir.1978) (where judgment in ERISA case results in common fund, district court may determine whether common fund theory should apply or whether, instead, attorney's fees should be assessed directly against breaching fiduciaries).

**13.** However, the court is careful to note that the same might not be true of a common fund award in a case in which (1) the settlement did not address the issue of fees, or (2) instead of settling the case, plaintiffs had obtained a money judgment resulting in the creation of such a

fund. Nor does the court assume that choices between, on the one hand, principles derived from statutory fee awards and, on the other, those appropriate to common benefit cases, would be identical in actions brought under ERISA and those brought under other fee-shifting provisions such as 42 U.S.C.A. § 1988. *See Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1265 (5th Cir.1980) (contrasting purpose of § 1988 with that of ERISA fee-shifting provision); Note, *Attorney's Fees Under ERISA: When Is An Award Appropriate?*, 71 Cornell L.R. 1037, 1049–55 (1986) (same).

torney's Fees Under ERISA: When Is An Award Appropriate?, 71 Cornell L.R. 1037, 1061 (1986) ("nothing in ERISA indicates that Congress intended to preempt the common benefit doctrine"). The court's preliminary view is that the fund in this case is large enough to support both a reasonable attorney's fee and a fair settlement for the plaintiff class.[14]

### B.

■ The court's decision to treat this as a common fund case for the purpose of evaluating Beck's fee request is not the end of the matter, however. The law is unsettled with regard to how a court should calculate the amount of a reasonable attorney's fee in a common fund lawsuit. Some courts have followed the Supreme Court's suggestion in dicta from *Blum v. Stenson*, that "under the 'common fund doctrine' . . . a reasonable fee is based on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984). *See Brown*, 838 F.2d at 454–56; *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 736 F.Supp. 1007, 1015–16 (E.D.Mo.1990); *See also* Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 254–9 (1985). However, a number of courts have adhered to some version of the "lodestar" approach, used in determining statutory fees, according to which the attorney's compensation is calculated based essentially on the number of hours devoted to the case multiplied by a reasonable hourly rate. *See In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 232 (2nd Cir.1987); *Skelton*, 860 F.2d at 257. *See also Parker*, 667 F.2d at 1214. Still other courts have used both a percentage and a lodestar approach, or indicated that a district court is free to choose between the two, depending on the particular circumstances of each case. *See Six (6) Mexican*

Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir.1990); *Bebchick*, 805 F.2d at 407–09 & n. 35; *Mashburn*, 684 F.Supp. at 698.

In light of the principles generally underlying common fund fee awards as well as considerations specific to this lawsuit, the court concludes that plaintiffs' counsel's fee should be calculated according to a lodestar formula. However, as the court discusses below, the amount recovered and the common-fund character of the recovery are relevant to determining Beck's fee under this approach, and the court has evaluated the fairness of the resulting figure by considering the percentage which it represents of the common fund created for the class. *See Bebchick*, 805 F.2d at 407–09 & n. 35 (60% enhancement of lodestar fee can be attributed to fact case involved common fund; total fee was reasonable as it represented 25% of fund). The court declines to rely on a percentage approach here for several reasons. First, even in those cases in which attorney's fees have ostensibly been calculated as a proportion of a common fund, most courts have felt compelled to vary the figure selected, based on the size of the recovery, in order to avoid windfalls to plaintiffs' lawyers and to take account of the actual amount of time devoted to the case by the attorney. *See* Newburg, Attorney Fee Awards, § 2.08–09, at 19–20 (December 1990 Cumulative Supplement) (common fund fees normally constitute 20–30% of the class recovery; however, for recoveries of $40–75 million, fee awards usually fall in 13–16% range, and for recoveries of $75–100 million and more, fees in 6–10% range are the norm). Second, while a percentage approach appears to offer a simpler method of calculating fees, the sticky question of exactly how much of the common fund is attributable to attorney Beck's litigation efforts makes the formula a difficult one to apply in this case.[15] Third, although the court has chosen to

---

**14.** As the court has already stated, it has not yet approved the class settlement. Its determination of a reasonable attorney's fee for Beck is conditioned on such approval of the overall settlement. Of course, if the court later concludes that the amount remaining in the fund,

after a deduction for Beck's fee, does not represent a fair settlement, the court will be required either to modify its award of attorney's fees or reject the proposed settlement.

**15.** *See* notes 5 and 6, accompanying text, *supra*.

treat this as a common fund case rather than one involving a strictly statutory fee request, the fact that the lawsuit was initiated under a fee-shifting provision offers yet another reason for utilizing a lodestar approach to calculate attorney's fees. In the usual common fund case, the question of whether the fund was created through a judgment or a settlement is irrelevant to the method by which the amount of compensation is determined. In a case such as this one, however, had plaintiffs prevailed at trial, it is entirely possible that defendants, rather than the common fund, would have been liable for attorney's fees under ERISA, 29 U.S.C.A. § 1132(g)(1).[16] For the court to award plaintiffs' counsel a percentage of the settlement when he might only have been entitled to an hourly—and therefore possibly lower—fee had he obtained a favorable judgment, would raise the spectre of a significant conflict of interest between counsel and the absent class members in the negotiation of such a settlement.[17]

## C.

■ The "starting point" in setting an attorney's fee under the lodestar method is to determine the lodestar figure—that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). *Accord Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Id.* at 1303. After calculating the lodestar fee, the court should then proceed with an

analysis of whether any portion of this fee should be adjusted upwards or downwards. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air ("Delaware Valley I")*, 478 U.S. 546, 565–66, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940.

In making the above determinations, the court is guided by the 12 factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974). *See Delaware Valley I*, 478 U.S. at 564, 106 S.Ct. at 3097–98; *Norman*, 836 F.2d at 1299.[18] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases.

■ Furthermore, because the fee in this case will derive from the plaintiff class's settlement fund, and the defendants, therefore, no longer possess an economic interest in the determination of the fee, the court must act as a fiduciary for class members and must be especially careful to scrutinize every factor relevant to determining the size of a reasonable attorney's fee. *See Parker v. Anderson*, 667 F.2d 1204, 1214 (5th Cir.), *cert. denied*, 459 U.S.

---

16. *See* notes 8 & 13, *supra.*

17. This dilemma might arise, for example, in a case in which both plaintiffs and defendants were aware that there was a 90% chance that (1) plaintiffs would prevail at trial and win a judgment of approximately $900,000, and if they prevailed, (2) plaintiffs' counsel would almost certainly recover fees directly from the defendants in the amount of $100,000, under an applicable fee-shifting statute, employing a lodestar approach. In such a case, a hypothetically reasonable lump-sum settlement of $900,000 (representing the defendants' total liability, dis-

counted by the plaintiffs' 10% chance of recovering nothing) would—were the court to award a fee within the usual range of 20–30% of the settlement, *see* Newburg, § 2.08 at 19—result in a fee of $200,000 to $300,000, two to three times the estimated award to plaintiffs' counsel following a favorable judgment.

18. It is presumed that most or all of the *Johnson* factors will be subsumed in the calculation of the lodestar. *Norman*, 836 F.2d at 1299; *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982); Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 255 (1985).

### i. Reasonable Hours

■ Plaintiffs' attorney Beck has requested compensation for 951.6 hours, and has submitted itemized documentation of the time he has devoted to this case. The court has considered two *Johnson* factors—the novelty and difficulty of the case, and the amount involved and the result obtained—in assessing the reasonableness of the hours claimed. ERISA law is, in general, extremely complex and unsettled, and this case, in particular, presented several difficult legal issues. *See Curry v. Contract Fabricators Profit Sharing Plan,* 744 F.Supp. 1061, 1071 (M.D.Ala. 1988), *aff'd,* 891 F.2d 842 (11th Cir.1990). Nevertheless, Beck was able to obtain substantial relief for the entire plaintiff class.

Although they have objected to other aspects of the fee petition, defendants have not challenged the number of hours claimed. However, the court has conducted an independent review of Beck's hours to determine if there is any time that should be excluded because it was "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40. The court is satisfied that all of the hours listed appear to have been necessary, and directly related, to litigating this case, and that Beck has exercised reasonable "billing judgment." *Norman,* 836 F.2d at 1301. The court therefore concludes that plaintiffs' counsel is entitled to the full number of hours claimed.

### ii. Prevailing Market Rate

■ "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. Attorney Beck contends that he is entitled to between $200 and $225 an hour, and the defendants contend that he is entitled to substantially less. To determine the prevailing market rate, the court will consider the following *Johnson* factors: customary fee; skill required to perform the legal services properly; the experience, reputation, and ability of the attorney; time limitations; preclusion of other employment; undesirability of the case; nature and length of the professional relationship with the client; and awards in similar cases.

*Customary Fee:* The evidence shows that a non-contingent hourly fee of $150 an hour is within the $100 to $150 an hour range of fees charged by attorneys in Alabama practicing in similar areas of law with approximately the same experience as Beck. Beck's affidavit indicates that in his commercial practice, involving cases that are less demanding and difficult than this one, he ordinarily charges $100 an hour for out-of-court work and $150 an hour for in-court work.[19] *See Bebchick,* 805 F.2d at 404 ("actual rate that applicant's counsel can command on the market is itself highly relevant proof of the prevailing community rate").

*Skill Required to Perform the Legal Services Properly:* As the court has mentioned, ERISA litigation in general requires a highly skilled attorney well versed in the intricacies and most recent developments in this rapidly changing, specialized area. Moreover, this case in particular presented difficult factual and legal issues.

*Experience, Reputation, and Ability of the Attorney:* Beck has been practicing law for approximately 25 years. He served as Deputy Attorney General for the State of Alabama for eight of those years, and, while in private practice, has gained considerable experience with class action and other complex litigation. He has handled numerous ERISA lawsuits, and has lectured to other attorneys and published an article about the statute.

19. Although Beck also suggests that in undertaking complex litigation in federal court, he "would expect" a fee of between $200 and $225 an hour, he does not state that he actually commands this fee. Moreover, affidavits from other attorneys submitted by Beck in support of his fee request do not indicate that $200 to $225 an hour is an actual, customary fee in cases like this one.

*Time Limitations:* Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson,* 488 F.2d at 718. There is no evidence of such limitations in this case.

*Preclusion of Other Employment:* This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson,* 488 F.2d at 718. Beck has devoted a substantial amount of time to this litigation, and as a result he was compelled to turn away other cases.

*Undesirability of the Case:* There is no evidence that ERISA cases are undesirable.

*Nature and Length of Relationship With Client:* Beck had no prior professional relationship with the named plaintiffs or absent class members.

*Awards in Similar Cases:* In *Curry v. Contract Fabricators Profit Sharing Plan,* 744 F.Supp. 1061 (M.D.Ala.1988), *aff'd,* 891 F.2d 842 (11th Cir.1990), this court noted that "because there are so few attorneys in Alabama who practice ERISA law and because there are so few ERISA cases, there is little evidence to be found of a customary fee." *Id.* at 1072. Based on their inexperience, the court awarded the lawyers in that case $60 an hour, which it acknowledged was "on the low side." [20] *Id.* This case is distinguishable from *Curry* because Beck is a seasoned attorney with particular expertise in ERISA law, and because this was a large class action rather than a case involving an individual ERISA beneficiary. Moreover, this court has awarded non-contingent fees in the range of $75 to $150 an hour in civil rights

cases which are somewhat analogous to lawsuits brought under ERISA.[21]

The court remains of the opinion, based on these criteria and as previously determined, that the prevailing market rate for non-contingent work performed by attorneys of similar experience in similar cases is $150 an hour for Beck.[22]

### iii. Lodestar Calculation

The unadjusted lodestar for an attorney consists, as stated, of the product of the attorney's compensable hours multiplied by his prevailing market fee. The lodestar for plaintiffs' counsel is: 951.6 hours × $150 an hour = $142,740.00.

### iv. Adjustment

■ Although plaintiffs' counsel primarily asserts that he is entitled to one-third of the common fund in this case as an attorney's fee, he argues, in the alternative, that if his fee is calculated according to the lodestar formula, it should be enhanced by 50%. Defendants contend that Beck is not entitled to an enhancement, and that even if he is, his fee should not be increased any more than 60% above the lodestar figure.

The court has considered 11 of the 12 *Johnson* factors in its analysis and determination of the reasonableness of the hours and fee rate claimed. The one criterion that it has yet to consider is the contingent nature of Beck's fee. In *Pennsylvania v. Delaware Valley Citizens Council for Clean Air ("Delaware Valley II"),* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), a majority of the Supreme Court held that attorney's fees may be enhanced if there is a risk of non-recovery of a fee in the case. Looking to Justice O'Connor's concurring opinion in *Delaware Valley II* as controlling, the court finds two prerequi-

---

**20.** The court also notes that *Curry* was decided almost three years ago.

**21.** *See, e.g., Robinson v. Alabama State Dep't of Educ.,* 727 F.Supp. 1422 (M.D.Ala.1989), *aff'd,* 918 F.2d 183 (11th Cir.1990) (table); *Stokes v. City of Montgomery,* 706 F.Supp. 811, 815 (M.D. Ala.1988), *aff'd,* 891 F.2d 905 (11th Cir.1989) (table); *Hidle v. Geneva County Bd. of Educ.,* 681 F.Supp. 752, 756 (M.D.Ala.1988); *York v.*

*Alabama State Bd. of Educ.,* 631 F.Supp. 78, 85 (M.D.Ala.1986).

**22.** By establishing the appropriate market rate on the basis of current rates, the court is also compensating plaintiffs' counsel for the delay in payment. *See Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *Norman,* 836 F.2d at 1302.

sites must be met *before* an enhancement may be made on the basis of contingency.[23] The fee applicant must first establish the degree to which the relevant market compensates for contingent fee cases as a class rather than relying on evidence as to the riskiness of the particular case, and second, must prove that without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or relevant market. *Id.* at 733, 107 S.Ct. at 3090–91 (O'Connor, J., concurring). *Accord Lattimore v. Oman Construction*, 868 F.2d 437, 439 & n. 4 (11th Cir.1989) (per curiam); *Stokes v. City of Montgomery*, 706 F.Supp. 811, 818 (M.D. Ala.1988), *aff'd*, 891 F.2d 905 (11th Cir. 1989) (table). Additionally, Justice O'Connor indicated that a fee may be enhanced to a level no higher than necessary to bring it within the range that would attract competent counsel. *Delaware Valley II*, 483 U.S. at 734, 107 S.Ct. at 3091.

The court has been presented with evidence in this case—and has, with the approval of the Eleventh Circuit, previously found—that the market in Alabama compensates for contingency in employment discrimination and other comparable fields of law with fees at least twice as large as those normally paid in similar non-contingent cases.[24] *See, e.g., Lattimore*, 868 F.2d at 439–40; *Stokes*, 706 F.Supp. at 818; *Hidle v. Geneva County Bd. of Educ.*, 681 F.Supp. 752, 758 (M.D.Ala.1988). However, in a recent ERISA case, this court found that "a 67% enhancement would bring ERISA cases within the range that would attract competent counsel." *Curry v. Contract Fabricators Profit Sharing Plan*, 744 F.Supp. 1061, 1073 (M.D.Ala. 1988), *aff'd*, 891 F.2d 842 (11th Cir.1990). In the absence of evidence from plaintiffs' counsel to indicate that attorneys would not take ERISA cases without an enhancement larger than the one awarded in *Curry*,[25] the court concludes that his fee should also be enhanced by 67%.[26]

Accordingly, Beck's fee is enhanced as follows: $142,740.00 $\times$ 1.67 = $238,375.80. The court also finds that the fee it has determined according to the lodestar formula amounts to slightly more than 23% of the $1,035,372.86 fund, fairly close to the 25% "benchmark" award that is presumed appropriate in common fund cases employing a percentage formula, and well within the customary 20% to 30% range. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.

**23.** *See Lattimore v. Oman Construction*, 868 F.2d 437, 439 & n. 4 (11th Cir.1989) (per curiam) (discussing why Justice O'Connor's concurring opinion is controlling); *Stokes v. City of Montgomery*, 706 F.Supp. 811, 815 (M.D.Ala. 1988), *aff'd*, 891 F.2d 905 (11th Cir.1989) (table) (same).

**24.** "The market principle in this state is that 'lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.'" *Stokes*, 706 F.Supp. at 816–17, *quoting Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.) (en banc), *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).

**25.** Although Justice O'Connor wrote that compensation for contingency should be based on the market's treatment of contingent fee cases as a class rather than the riskiness of a particular lawsuit, her use of the phrase, "relevant market" indicates that the court should focus not on all contingent fee cases in Alabama, but rather on contingent fee cases of a certain general character. *See Martin v. University of South Alabama*, 911 F.2d 604, 611 (11th Cir.

1990) (enhancement should have been based on risks generally associated with post-judgment work); *Stokes v. City of Montgomery*, 891 F.2d 905 (11th Cir.1989) (table) (unpublished disposition) (evaluating enhancement by considering compensation for contingency in employment discrimination cases). Here, the court has considered the contingent-fee market for ERISA cases rather than for large class actions, in light of an absence of evidence from plaintiffs' counsel as to the latter and the Supreme Court's disapproval of fee enhancement on the basis of "the potential for protracted litigation." *See Delaware Valley II*, 483 U.S. at 731, 107 S.Ct. at 3090 (O'Connor, J., concurring). Moreover, this court has followed the reasoning of Justice O'Connor and the plurality in *Delaware Valley II*, and has considered the fact that this was a large class action lawsuit in calculating the lodestar and determining that Beck is entitled to an hourly rate at the high end of the applicable range. *See id.*

**26.** The court also notes that although plaintiffs' counsel requested an hourly rate and a total fee larger than the one the court has awarded him, he requested an enhancement of only 50%, smaller than the one applied by the court.

1990); *Bebchick v. Washington Metro. Area Transit Com'n,* 805 F.2d 396, 409 n. 35 (D.C.Cir.1986); *Mashburn v. National Healthcare, Inc.,* 684 F.Supp. 679, 697 (M.D.Ala.1988); Newburg, Attorney Fee Awards, § 2.08, at 19 (December 1990 Cumulative Supplement).

## III.

■ Plaintiffs' counsel also requests an award of $37,508.59 for certain out-of-pocket expenses. Expenses claimed include costs for filing fees, copying, depositions, long distance telephone calls, postage, use of a paralegal, preparation of trial aids, and fees for lay witnesses and one expert witness.[27] The court has closely examined these expenditures, and all of them appear reasonable and necessary.[28] *See NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir.1987); *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1191–92 (11th Cir.1983). Therefore, the court concludes that Beck is also entitled to recover $37,508.59 in costs.

## IV.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that the request for attorney's fees and expenses, filed by plaintiffs' counsel George Beck on November 30, 1990, be and it is hereby partially and conditionally granted, as follows: Beck shall have and recover from the funds presently deposited with the registry of the court the sum of $238,375.80 as attorney's fees and $37,508.59 as costs, for a total sum of $275,884.39, at the time and on the condition that the court approves the proposed settlement in this action, filed with the court on February 21, 1990. When and if the court approves this settlement, it shall enter an additional order, directing the clerk of the court to release to Beck this sum from the deposited fund.[29]

**27.** The claimed expenses break down as follows:

| | |
|---|---:|
| Fees of the Clerk | $ 120.00 |
| Witnesses | 877.50 |
| Depositions | 2,478.24 |
| Travel | 880.51 |
| Meals | 600.14 |
| Lodging | 502.79 |
| Postage | 63.79 |
| Copying | 2,683.75 |
| Long Distance Telephone | 846.56 |
| Federal Express Charges | 48.75 |
| Fax Transmissions | 263.00 |
| Miscellaneous (trial aids, supplies, investigation) | 1,041.03 |
| Paralegal | 1,687.50 |
| Fees for Service of Summons and Complaint | 415.03 |
| Expert Witness | 25,000.00 |

**28.** The court notes that while expert witness fees may not be reimbursable when a prevailing plaintiff seeks to tax costs against a defendant under ERISA, *see Curry,* 744 F.Supp. at 1074; *see also Glenn v. General Motors Corp.* 841 F.2d 1567, 1574–76 (11th Cir.), *cert. denied,* 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988), no such limitation applies when expenses are sought from a common fund. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975) (congressional legislation regarding attorney's fees and costs should be "read as not interfering with the historic power of equity to permit ... a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs ... from the fund or property itself ..."); *Bebchick,* 805 F.2d at 409 (awarding $34,200 as expert witness expenses to plaintiffs' counsel in common fund case).

However, the court must point out that it still has reservations about the sizable amount requested by plaintiffs' counsel as reimbursement for the expense of a single expert witness. An expert fee of $125 an hour, resulting in a total fee of $25,000, is unusually large. Nevertheless, on balance and in light of the particular information on this expense specifically requested by the court and provided by Beck, the court will allow recovery of the cost of the expert.

**29.** Should the court ultimately accept a modified version of the proposed settlement, it may, on its own or on a motion by defendants, revisit the issue of the amount of fees and expenses to which Beck is entitled. Moreover, should any of the class members raise objections to the court's tentative award of fees and expenses, the court may also reconsider its decision.