MOORE, Chief Justice
(concurring in part and dissenting in part).
In Perdue v. Green, 127 So.3d 343 (Ala. 2012) (“Perdue I”), this Court held that, “to the extent the PACT Board acted to change its existing rules, procedures, or policies to accept modification of the PACT contracts, ... it violated the contractual relationship with the PACT contract holders by exceeding the express limitation set out in § 16-33C-19[, Ala.Code 1975.]” 127 So.3d at 357. Therefore, the settlement approved by the trial court was “clearly contrary to state law.” 127 So.3d at 358. *409 This Court vacated the trial court’s order approving the settlement agreement and remanded the case.
While the PACT board’s application for rehearing in Perdue I was pending in this Court, the legislature passed Act No. 2012-198, Ala. Acts 2012 (“the 2012 Act”), repealing § 16-3SC-19, Ala.Code 1975. I agree with Part I of the majority opinion that the retroactive application of the 2012 Act is not unconstitutional and does not impair the contractual rights or obligations of the PACT contract holders. I dissent, however, from Part II of the majority opinion regarding the award of $4,950,000 in attorney fees because such a fee is not justified in this case under the facts presented and is clearly excessive. I am also persuaded that the settlement agreement in this case should not have been approved because there exists an apparent conflict of interest between class counsel and the members of the class itself.
When considering the fairness, adequacy, and reasonableness of a proposed settlement agreement in a class action, a court must pay special “attention to the amount of attorneys’ fees awarded to class counsel because ‘the simultaneous negotiation of class relief and attorney’s fees creates a potential for conflict.’ ” Knight v. Alabama, 469 F.Supp.2d 1016, 1036 (N.D.Ala.2006) (quoting Manual for Complex Litigation § 30.42, at 239 (3d ed. 1995)). Because of this potential for conflict between class members and their attorneys in class-action matters, a court reviewing an award of attorney fees in a class-action settlement must be careful to scrutinize the reasonableness of the attorney fees. As the federal district court explained in Bowen v. SouthTrust Bank of Alabama, 760 F.Supp. 889, 892 (M.D.Ala. 1991):
“In determining whether plaintiffs’ counsel is in fact entitled to fees, and if so, in what amount, the court must be sensitive to the potential conflict of interest between plaintiffs and their counsel, and must be particularly careful to insure that the ultimate division of settlement funds is fair to absent class members.”
Accordingly, this Court should more carefully examine the trial court’s award of class counsel’s attorney fees for reasonableness as well as for the inherent conflict of interest with class members that existed when exorbitant fees were agreed to by the PACT board during settlement negotiations. With regard to the issue of the attorney fees, I cite Carol M. Perdue’s brief and her brief on return to remand throughout this dissent. Those briefs speak for themselves regarding whether the appellants challenge class counsel’s fees on appeal. The Court does not need to search the record to make the appellants’ case for them; Perdue makes her case by citing to the record in her briefs to this Court. See Perdue’s brief, at 42-66; Perdue’s brief on return to remand, at 54-58.
As Perdue notes in her brief on original submission, a fact that weighs against such an excessive attorney-fee award is that this case was settled in the early pretrial stages of the proceedings, only six depositions having been taken by the PACT board and at most two depositions by class counsel. Perdue’s brief, at 51-53. Furthermore, as Perdue argues, class counsel never disclosed an expert, and there is no indication that an expert was even consulted. Perdue’s brief, at 43, 51-52, 59, 64-65. Moreover, nothing in the record shows that class counsel deposed members of the PACT board or the actuary upon whose testimony the settlement amount was based. Perdue alleges as much in her brief. Perdue’s brief, at 43, 51-52, 58-59, *410 64-65. Finally, costs and expenses of class counsel were calculated to be only $15,000.
In light of the foregoing, the time and labor required of class counsel to this point in this case do not appear to warrant an award of $4,950,000 in attorney fees out of the already strained PACT trust fund. See Perdue’s brief, at 43, 46, 59-68. See also Rule 1.5, Ala. R. Prof. Conduct (time and labor expended by an attorney are to be considered in determining whether a fee is excessive).[21]
Perhaps most problematic is that the interactions of class counsel and the PACT board during settlement negotiations leave the impression that those parties lacked an adversarial relationship. Perdue discusses this alleged conflict at length in her briefs to this Court. Perdue’s brief, at 42-44, 59-66; Perdue’s brief on return to remand, at 53-58. As one objector noted: “ ‘I’m not too happy with what I’ve seen in the court here with opposing counsel. Seems like they are holding hands more than they are representing two different sides.’ ” Perdue’s brief, at 42.
Class counsel distributed to the members of the class a “Settlement Description” and a “Questions and Answers” form, both of which repeated the financial conclusions of the PACT board and the actuary retained by the PACT board, even though class counsel had never retained their own expert to challenge or verify those conclusions. Perdue’s brief, at 43, 51-52, 56-59, 64-65; Perdue’s brief on return to remand, at 55-56. It appears that class counsel took at face value all the claims of the PACT board and its actuary regarding the financial condition of the trust fund and used those claims to encourage the class members to reach a settlement. See Perdue’s brief, at 43, 46, 51-52, 58-59, 64-65; Perdue’s brief on return to remand, at 54-56. Moreover, although class counsel had never deposed an expert to refute the findings of the actuary hired by the PACT board, the “Settlement Description” and “Questions and Answers” form distributed by class counsel warned the class in strong language about the consequences of not settling the case:
“[I]f things continued on course, by the fall of 2012 the PACT fund would not have enough money to even give you your money back. And within a few years the PACT fund would be completely out of money.
“The second alternative was to simply shut the Program down before the point of no return (fall 2010) and insure that each PACT participant at least got their money back.
“Is this what you bargained for? No, it is not. Is this better than simply shutting the Program down? We believe it is.
“If that was the ruling, by the time this case was fully litigated the. PACT fund could be out of money and you could have lost everything.
“If this case lasted past the fall of 2012 and we were not able to hold the State liable on these contracts all may well have been lost.
*411 [[Image here]]
“The alternative is to simply go ahead, face the inevitable, shut the program down and give everyone their money back. It is our opinion that if this settlement is not approved, or if a few people delay it through appeals, that the program will collapse. If that collapse occurs after next fall, you folks won’t even be able to get your money back. That is unacceptable to us.
“Given that the PACT Program was on the verge of collapse, the benefit here was saving the program. The value of that is in excess of $500 million.”
Perdue’s brief, at 56-57. Such inducements to settle seem particularly suspect when class counsel stood to benefit $4,950,000 should the class members accept the settlement. Perdue’s brief, at 42-44, 46, 52-53, 55-59, 60-61, 65; Perdue’s brief on return to remand, at 56-58. And class members have every reason to suspect a lack of an adversarial relationship when class counsel and the PACT board agreed to full payment of attorney fees prior to this Court’s ruling on the appeal, despite the fact that the settlement agreement restricted such payments until after the appeal process had been completed. Perdue’s brief, at 43, 61-63; Perdue’s brief on return to remand, at 56-58.
After the objectors filed a “Motion to Stay of Execution of Judgment and Expedited Treatment” with this Court, class counsel and the PACT board submitted a joint response in opposition to the motion, filings noted in Perdue’s brief, at 43, 62-63, and in Perdue’s brief on return to remand, at 56. Both class counsel and the PACT board worked together to authorize immediate payment of the attorney fees in violation of the very settlement agreement they now ask this Court to approve. I must respectfully disagree with the majority opinion that “nothing indicates] that the trial court exceeded its discretion in failing to find that a conflict of interest affected the attorney-fee award in this case.” 127 So.3d at 402.
In conclusion, although I find no fault in the enactment of the 2012 Act and the legislature’s attempt to address potential problems with the PACT program, I am compelled to disapprove a settlement agreement that both class counsel and the PACT board have already violated, and I respectfully dissent from the majority opinion both as to the attorney fees awarded and as to the approval of the settlement agreement entered in this class action.

. In most class actions, a common fund is created either by a final judgment in the action or the settlement of the class action and is maintained by class counsel for the benefit of class members. In this case, as the majority opinion recognizes, class counsel did not create a common fund because the PACT trust fund already existed when class counsel was retained and the fund was maintained by die PACT board. In a footnote, the majority states that the "common-fund doctrine also applies when a fund is preserved or protected." 127 So.3d at 399 n. 14. I agree. However, the fact that class counsel did not have to create a common fund suggests that counsel did not have to do as much work as is usually required in class-action litigation.