*1055
 

 MEMORANDUM OPINION AND ORDER
 

 ANN CLAIRE WILLIAMS, District Judge.
 

 Plaintiff Robert F. Mansfield (“Mansfield”) brings this lawsuit against his former employer, the Chicago Park District, and the Chicago Park District Group Plan (collectively “the Park District”). Mansfield alleges that the Park District violated the Consolidated Omnibus Budget Reconciliation Act (“COBRA”) amendments to the Public Health Service Act (“PHSA”), 42 U.S.C. §§ 300bb-l to -8. Both parties move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the court denies, both motions.
 

 Background
 

 The court takes the following uncontested facts from Defendants’ and Plaintiff’s Statements of Material Facts. Mansfield was an employee of the Chicago Park District and a participant in the Park District’s group health plan.
 
 (See
 
 Defs.’ 12(M), ¶¶ 1-3.)
 
 [1]
 
 In May 1993, Mansfield became eligible to retire.
 
 (See id.,
 
 ¶¶ 4.) On May 4, 1993, Mansfield met with Josephine Rankins, the Park District’s Plan administrator, to discuss his planned retirement.
 
 (See id.,
 
 ¶ 5.) At this meeting, Mansfield signed a form acknowledging that his medical benefits would expire on June 30, 1993.
 
 (See id.,
 
 ¶ 11.) Rankins did not inform Mansfield of his COBRA rights to continued medical coverage.
 
 (See id.,
 
 ¶ 5; Pl.’s 12(N), Add. Facts ¶ 4.) Furthermore, the Park District never informed Mansfield, either orally or in writing, of his COBRA rights.
 
 (See
 
 Defs.’ 12(M), ¶ 11.) Mansfield retired on May 31, 1993.
 
 (See id.,
 
 ¶ 6.
 

 On October 3, 1993, Mansfield suffered a serious heart attack while in Honduras, Central America.
 
 (See id.,
 
 ¶ 13.) Mansfield’s heart attack caused him to be hospitalized in Honduras, then transported to a hospital in Tampa, Florida.
 
 (See id.,
 
 ¶¶ 14-15.) Mansfield’s condition required him to remain in the Tampa hospital throughout October and November 1993 to undergo various medical and surgical procedures.
 
 (See id.,
 
 ¶¶ 15-16.) Since November 1993, Mansfield has remained in the care of physicians in Tampa as an outpatient and must travel there regularly to receive medical care.
 
 (See id.,
 
 ¶ 16.) Because Mansfield has had no health insurance coverage since June 30, 1993, he has had to bear the costs of his medical treatment.
 
 (See id.,
 
 ¶ 17.)
 

 Analysis
 

 Both Mansfield and the Park District move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The court will render summary judgment only if the factual record shows “that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 
 Bratton v. Roadway Package Sys., Inc.,
 
 77 F.3d 168, 173 (7th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). The court will not render summary judgment if “a reasonable jury could return a verdict for the non-moving party.”
 
 Sullivan v. Cox,
 
 78 F.3d 322, 325 (7th Cir.1996) (citing
 
 Anderson v. Liberty Lobby,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party.
 
 See Bratton,
 
 77 F.3d at 171 (citation omitted);
 
 Sullivan,
 
 78 F.3d at 325 (citation omitted).
 

 On a motion for summary judgment, the moving party “bears the initial burden of showing that no genuine issue of material fact exists.”
 
 Hudson Ins. Co. v. City of Chicago Heights,
 
 48 F.3d 234, 237 (7th Cir.1995) (citing
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Then the burden shifts to the non-moving party, which “must set forth specific facts showing that there is a genuine issue for trial.” Fed.R.Civ.P. 56(e);
 
 accord NLFC, Inc. v. Devcom Mid-America, Inc.,
 
 45 F.3d 231, 234 (7th Cir.) (citations omitted),
 
 cert. denied,
 
 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995).
 

 According to Mansfield, the Park District violated the PHSA when it failed to give him notice of potential post-retirement health care benefits. Under the PHSA employees
 
 *1056
 
 “who would lose coverage under [their health] plan as a result of a qualifying event, [are] entitled, under [COBRA], to elect, within the election period, continuation coverage under [their health] plan.” 42 U.S.C. § 300bb-l(a). COBRA requires that employers offer continuation coverage for up to thirty-six months after a qualifying event.
 
 See
 
 42 U.S.C. § 300bb-2(2). Furthermore, health plans must provide “written notice to each covered employee ... of the rights provided under [COBRA].” 42 U.S.C. § 300bb-6(1). Mansfield alleges that his retirement was a “qualifying event”. and should have triggered a COBRA notice.
 
 (See
 
 Pl.’s Mot., ¶¶ 2-3.) He requests damages of $61,656.37 to cover his post-retirement medical bills.
 
 (See id.,
 
 ¶¶ 6,10.)
 

 The Park District acknowledges, for purposes of its summary judgment motion, that Mansfield did not receive a COBRA notification.
 
 (See
 
 Defs.’ Mot. at 2.) The Park District argues, however, that no notice was required because Mansfield did not experience a qualifying event.
 
 (See id.
 
 at 6.) Alternatively, the Park District argues that Mansfield would not have been eligible for COBRA benefits when he resided in Honduras, and therefore, the Park District is hable for no more than nominal damages.
 
 (See id.
 
 at 3.)
 

 The resolution of both summary judgment motions depends on whether Mansfield experienced a qualifying event. If Mansfield’s retirement constituted a qualifying event, the Park District violated the PHSA’s COBRA provisions that required it to notify Mansfield of his right to continued health care coverage. On the other hand, if Mansfield’s retirement did not constitute a qualifying event, summary judgment in the Park District’s favor is appropriate. Therefore, the court first addresses the issue of whether Mansfield’s retirement constituted a “qualifying event.”
 

 I. QUALIFYING EVENT
 

 In 1986, Congress found a “growing number of Americans without any health insurance coverage” and enacted COBRA “to provide continued access to affordable private health insurance for some of these individuals.” H.R.Rep. No. 99-241, at 44 (1986),
 
 reprinted in
 
 1986 U.S.C.C.A.N. 42, 622.
 
 See also Williams v. New Castle County,
 
 970 F.2d 1260, 1264 (3rd Cir.1992). “The option of electing continuation coverage [is] offered during a period that begins when the individual otherwise would lose coverage under the group health plan.” H.R.Rep. No. 99-241, at 44 (1986),
 
 reprinted in
 
 1986 U.S.C.C.A.N. 42, 622. “The health care continuation rules generally require that employers provide [covered employees] with the opportunity to participate for a specified period in the employer’s health plan despite the occurrence of a
 
 qualifying event
 
 that otherwise would have terminated such participation.” H.R.Rep. No. 101-247, at 1452 (1989),
 
 reprinted in
 
 1989 U.S.C.C.A.N. 1906, 2922 (emphasis added).
 

 [T]he term “qualifying event” means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under [COBRA], would result in the loss of coverage of a qualified beneficiary: ... (2) the termination (other than by reason of such employee’s gross misconduct), or reduction of hours, of the covered employee’s employment.
 

 42 U.S.C. § 300bb-3. Retirement “is a ‘qualifying event’
 
 if
 
 it would result in loss of coverage under the plan.” Employee Benefits Committee, American Bar Association,
 
 Employee Benefits Law
 
 993 (1991) (emphasis in original).
 

 The Park District argues that Mansfield’s retirement did not constitute a qualifying event because Mansfield’s retirement did not “result in the loss of coverage.” (Defs.’ Mot. at 2.) The Park District argues that Mansfield’s retirement did not result in a loss of coverage because, “at his option after retirement, [Mansfield] could have continued his medical coverage with the Park District for many years.”
 
 (Id.)
 
 The Park District claims that Mansfield lost his coverage because he voluntarily elected to cancel his benefits.
 
 (See id.
 
 at 8.)
 

 Mansfield contends, however, that his retirement did constitute a qualifying event.
 
 (See
 
 Pl.’s Mot., ¶ 2.) He claims that the Park District “considered retirement a qualifying event.” (Pl.’s Reply at 2.) Mansfield argues that the. Park District must give retiring employees a COBRA notice “whether the retiree had some option of continuing cover
 
 *1057
 
 age under a ‘retirement plan’ or not.”
 
 (Id.)
 
 Furthermore, Mansfield testified that he signed the form “canceling” his benefits only because he was told that “he had
 
 no
 
 health insurance options, be they COBRA, or retirement, or otherwise.”
 
 (Id.
 
 at 6) (emphasis in original).
 

 This is a case of first impression. This court cannot find any case that addresses whether the availability of an option to continue existing medical coverage excuses an employer from giving a retiring employee COBRA notice. Additionally, the plain language of the PHSA does not expressly contemplate this factual situation. Therefore, the court looks to the congressional intent underlying the COBRA amendments to the PHSA.
 

 Congress’ intent is clear. Congress enacted COBRA primarily “to provide continued access to affordable private health insurance for [many Americans].” H.R.Rep. No. 99-241, at 44 (1986),
 
 reprinted in
 
 1986 U.S.C.C.A.N. 42, 622. To this end, COBRA gives employees the option of continuing their health care coverage after the occurrence of an event that would otherwise cancel their benefits.
 
 See
 
 42 U.S.C. § 300bb-l(a). However, Congress chose to go further than merely giving employees the option of continuing their health coverage. COBRA also requires employers to give adequate and timely notice to employees of their rights to continued medical care coverage.
 
 See
 
 42 U.S.C. § 300bb-6.
 
 [2]
 
 Thus, Congress not only wanted employees to have the option of continuous medical coverage; it also insisted that employees be fully informed of their options when their coverage ends.
 

 In light of this statutory scheme and legislative intent, it follows logically that if a retiring employee automatically continues to receive the same medical coverage he or she had before retirement, no qualifying event occurs. However, if the health plan requires any action by the employee to continue this coverage, and without this action the employee’s coverage would terminate, then retirement is a qualifying event and the employer must give its retiring employee COBRA notice.
 

 For example, if an employer automatically continued an employee’s medical coverage when that employee retired, no qualifying event occurred because the employer did not require the employee to take any steps to continue the health coverage. Similarly, if an employer automatically continued a retiring employee’s medical coverage
 
 unless
 
 the employee signed a statement declining coverage, there is still no qualifying event because the employer did not impose an obligation on the employee to continue health benefits, rather the employer only required the employee to act to cancel continued health coverage.
 

 In contrast, a qualifying event would take place if the employer required the retiring employee to take some affirmative step to obtain continued health care coverage. Unlike the previous two situations where the continued coverage was automatic, the employee in this example would lose health care coverage unless he or she took some action to maintain coverage. Thus, “but for the continuation coverage required under [COBRA],” 42 U.S.C. § 300bb-3, the employee in this example would lose health care coverage. Therefore, forcing a retiring employee take steps to secure available continuation health coverage triggers a qualifying event. This conclusion is consistent with the congressional purpose of not only making continued health coverage available, but also requiring employers to notify their employees of that coverage.
 

 The PHSA does not relieve employers of their obligation to give retiring employees COBRA notice merely by making other continued coverage “available.” Rather, the statute envisions retirement as a qualifying event when, “but for the continuation coverage under [COBRA],” retirement would cause the loss of health care coverage. When an employer simply makes continued coverage available, the retiring employee will lose his or her health care coverage, “but for the continuation coverage under [COBRA],”
 
 unless
 
 the retiree takes additional steps to obtain other available coverage. The PHSA was never intended to impose this additional burden on retiring employees. If we inter
 
 *1058
 
 preted the PHSA.as the Park District suggests, every employer could avoid the COBRA notice requirements by arguing that retiring employees can obtain continued health coverage from an independent provider. Such an interpretation would render the statute meaningless. and this court will not give the statute such a tortured reading.
 

 The Park District cites its employee handbook as evidence of the continuing coverage that is available to retiring employees.
 
 (See
 
 Defs.’ 12(M) ¶ 7.) The handbook states that under COBRA, “former employees and dependents
 
 may
 
 continue health insurance coverage under certain circumstances. Additionally, retirees
 
 may
 
 continue their health insurance coverage at their own expense.”
 
 (Id.,
 
 Ex. D, at 18) (emphasis added). The Park District’s Health Plan Administrator, Josephine Rankins (“Rankins”), testified that all retirees, including Mansfield,
 
 “could”
 
 elect to continue their medical coverage indefinitely.
 
 (See
 
 Rankin’s Mar. 25, 1997 Dep., Defs.’ 12(M), Ex. E, at 88-89) (emphasis added).
 

 The Park District contends that a qualifying event does not occur if retirees “may” continue their medical coverage indefinitely.
 
 [3]
 
 This approach does not comport with Congress’ intent. The Park District offers continuous medical coverage longer in duration than required by COBRA However, the
 
 length
 
 of coverage is not dispositive. On the contrary, employers must not only
 
 provide
 
 employees the option of continuing their coverage. Employers must also
 
 inform
 
 employees about their medical coverage options.
 

 The Park District also argues that Mansfield voluntarily canceled health care coverage that could have otherwise continued.
 
 (See
 
 Defs.’ Mot., at 2.) The Park District correctly points out that Mansfield completed and signed a form letter stating:
 

 I, Robert Mansfield, would like to cancel my Chicago HMO with the Chicago Park District Group plan, as I will no longer need this medical insurance coverage, effective June 30, 1993. I am retiring May 31, 1993____ I understand that it is the Park District policy, that I cannot be reinstated into the Park District Group after 30 days.
 

 (Defs.’ 12(M), Ex. F.) Mansfield acknowledges signing this form but claims that Ran-kins instructed him to sign it as a part of the retirement process.
 
 (See
 
 Mansfield’s Oct. 30, 1995 Dep., PL’s 12(N), Ex. 15, at 52.) Mansfield also testified that Rankins neither explained the form he was signing nor gave him any other information on his health care insurance options.
 
 (See id.
 
 at 52-53.)
 

 Athough Rankins does not remember meeting with Mansfield,
 
 (see
 
 Rankin’s Mar. 25, 1997 Dep., PL’s 12(N) Ex. 17, at 30-32), she testified that it was her procedure to send continuation health care information to all employees when they retire,
 
 (see id.
 
 at 75). Rankins stated that this information allows employees to decide whether to continue their medical coverage indefinitely or take the COBRA option.
 
 (See id.
 
 at 94-95.) However, the Park District’s pension documents, suggest that the continuation of health benefits is not automatic. A form letter given to Mansfield with an Application for Retirement Annuity stated “[i]f you
 
 wish
 
 to continue your hospitalization, please contact Josephine Rankins.” (Defs.’ 12(M), Ex. C) (emphasis added).
 

 Based on this factual record, the court cannot conclusively determine whether Mansfield’s retirement was a qualifying event. A trial must determine whether the continuation of medical benefits required an affirmative act by a Park District retiree. If so, Mansfield’s retirement was a qualifying event requiring COBRA notification. In this case, the handbook said that a retiree “may” elect continuation coverage. Additionally, the pension form instructed retirees to contact the Plan administrator if they “wished” to continue coverage. Finally, Rankins testified that retirees “could” continue their medical care coverage.
 

 These facts strongly support the conclusion that the Park District required its retiring employees to take affirmative steps to secure continued health care coverage. Mansfield will therefore have a very persuasive argument at the bench trial that his retirement constituted a qualifying event. Nevertheless, because the permissive lan
 
 *1059
 
 guage in the documents and Rankins’ testimony is not entirely dispositive, the court is prohibited from entering summary judgment at this time. Although the court is tempted to grant Mansfield’s motion for summary judgment, the record before the court does not quite satisfy the summary judgment standard.
 

 Additionally, a trial must evaluate the evidence and determine the effect of Mansfield’s health coverage cancellation form. The parties dispute the circumstances under which Mansfield signed the cancellation form and what effect that form has. If Mansfield’s health coverage would have automatically continued even though he signed the cancellation form, no qualifying event occurred. However, neither party has conclusively shown whether Mansfield’s medical benefits would have continued upon his retirement without some action on his part. Furthermore, the cancellation form that Mansfield signed does not prove that he would have received medical benefits if he had not signed. Because reasonable minds could differ over the issue of whether Mansfield’s retirement constituted a qualifying event, the court denies both parties’ motions for summary judgment.
 

 II. OTHER ISSUES
 

 Athough the court denies both summary judgment motions, it will address the defendants’ other arguments to narrow the issues for the remainder of this litigation. First, the Park District contends that even if Mansfield were entitled to a COBRA notice, it has no liability for his medical bills.
 
 (See
 
 Defs.’ Mot. at 11.) Athough the parties disagree over whether Mansfield had “moved” or was “residing” in Honduras, he did suffer a heart attack while he was there.
 
 (See
 
 Defs.’ 12(M), ¶¶ 14-16.) The Park District argues that it has no liability to Mansfield because none of its medical plans would have provided coverage in Honduras.
 
 (See id.
 
 at 11.)
 

 Defendants’ argument is logically flawed and entirely irrelevant. The Park District’s argument rests on the premise that if Mansfield had obtained health coverage, he would have been living in Honduras at the time he suffered his heart attack. The Park District cannot prove, however, that Mansfield would have gone to Honduras if he had been provided medical insurance. After all, without any medical insurance it did not matter to Mansfield where he moved. However, Mansfield may -very well have elected to stay in Chicago if he had been properly notified that his medical insurance would not cover him in Honduras. Defendants cannot escape liability by speculating where an insured Mansfield would have been when he suffered his heart attack. The Park District’s argument necessarily fails because it is premised on an unprovable hypothetical.
 

 The Park District also argues that Mansfield would not have been eligible for COBRA coverage after he- “moved” to Honduras.
 
 (See id.
 
 at 9.) COBRA requires employers to provide “coverage which, as of the time the coverage is being provided, is identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred.” 42 U.S.C. § 300bb-2(1). The Park District’s existing medical coverage does not extend to Honduras. Therefore, it argues that it does not have to offer
 
 any
 
 coverage to Mansfield.
 

 This claim is also without merit. First, as already explained, neither party can prove that Mansfield would have gone to Honduras if he had obtained health insurance. However, assuming he would have, Mansfield is still entitled to choose a medical plan even if it has no value to him.
 
 Cf.
 
 42 U.S.C. § 300bb-1(b) (exceptions listed to COBRA coverage do not include waiver for lack of value to a beneficiary).
 
 (See generally,
 
 PL’s 12(N), Ex. 19, at 48.) In other words, Mansfield’s future plans do not reheve the Park District of its legal obligation to provide Mansfield with appropriate notice of his health care options.
 

 Conclusion
 

 The summary judgment standard is the only reason this case is proceeding to bench trial. While the bulk of the evidence indicates that Mansfield’s retirement constituted a qualifying event, some minor factual disputes exist that preclude the court from entering summary judgment in Mansfield’s favor. The court denies both plaintiff’s and defendants’ motions for summary judgment.
 
 [4]
 
 
 *1060
 
 The parties should discuss settlement before the next court date. The court recommends that the parties attempt to resolve this case through the Northern District of Illinois Litigation Settlement Task Force.
 

 [1]
 

 . Throughout this opinion, "Defs.’ Mot.” refers to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment; "Defs.’ 12(M)” refers to Defendants’ Rule 12(M) Statement submitted pursuant to Local Rule 12(M); "Pl.’s 12(N)” refers to Plaintiff’s Rule 12(N) Statement submitted pursuant to Local Rule 12(N); "PL's Mot." refers to Plaintiff’s Motion for Summary Judgment; and "Pl.’s Reply" refers to Plaintiff’s Brief in Opposition of Defendants’ Motion for Summary Judgment.
 

 [2]
 

 . An employer must give written notice even if employees are already fully informed about their COBRA rights.
 
 See Mlsna v. Unitel Communications, Inc.,
 
 825 F.Supp. 862, 865 n. 2 (N.D.Ill.1993),
 
 rev’d on other grounds,
 
 41 F.3d 1124 (7th Cir.1994).
 

 [3]
 

 . Apparently, there are some situations where more benefits are available under COBRA than under the Park District’s medical plan. Thus, some employees prefer the COBRA benefits even though they expire within 36 months.
 
 (See
 
 Ran-kins Mar. 25, 1997 Dep., Pl.’s 12(N), Ex. 17, at 90.)
 

 [4]
 

 . Because the court denies both motions for summary judgment, we do not address the amount of damages Mansfield would receive if he were to win his claim.