**Julia FENNER, Plaintiff,**

v.

**FAVORITE BRAND INTERNATIONAL, INC., a Delaware Corporation, and Aon Consulting, Inc., a Pennsylvania Corporation, Defendant.**

No. 97 C 5906.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 4, 1998.

872

Susan Renee Bauer, Dennis Ray Favaro, Patricia L. McLauchlan Jochum, Thill, Kolodz & Favaro, Palatine, IL, for Julia Fenner.

Alan Michael Kaplan, Nancy E. Sasamoto, Jack N. Bernstein, Masuda, Funai, Eifert & Mitchell, Ltd., Chicago, IL, for Favorite Brands Intern., Inc.

Carrie A. Durkin, Aon Corp., Chicago, IL, Marc D. Fisher, Chicago, IL, for Aon Corp.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Julia Fenner has filed a second amended complaint against defendants Favorite Brand International, Inc. ("Favorite Brands") and Aon Consulting, Inc. ("Aon"), alleging that Aon (Count I) and Favorite Brands (Count II) violated the Comprehensive Omnibus Budget Reconciliation Act of 1985 ("COBRA," 29 U.S.C. §§ 1161 *et seq.*) by failing to notify plaintiff of her COBRA rights in a timely manner. On August 6, 1998, plaintiff voluntary dismissed Aon from the case. Defendant Favorite Brands has filed a motion to dismiss Count II of the Second Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, Favorite Brands' motion is denied.

### BACKGROUND

In June 1996, plaintiff was working as an Art Director at a company known as Kidd & Company, located in Ligonier, Indiana. On June 17, 1996, Favorite Brands purchased Kidd & Company and continued to operate at the same location. Plaintiff remained employed by Favorite Brands and continued to work at the Ligonier plant until she moved to Palatine, Illinois in September 1996. After she moved, plaintiff continued to work for Favorite Brands out of her home, and reported to her supervisors at Favorite Brands' headquarters in Lincolnshire, Illinois.

Around the middle of October, 1996, plaintiff learned that Favorite Brands was closing the Ligonier plant and that all of the Ligonier employees had been contacted about their future with Favorite Brands or given severance packages and insurance options. Plaintiff was a beneficiary of a health plan provided first by Kidd & Company and subsequently by Favorite Brands. Plaintiff's insurance benefits and payroll were continuously received through the Ligonier plant, but Favorite Brands never contacted her regarding the shutdown of the plant. Plaintiff repeatedly asked Favorite Brands about the status of her insurance and payroll but never received a response.

On January 27, 1997, plaintiff was informed by representatives of Favorite Brands that her employment was terminated. Plaintiff did not receive a written notice of her COBRA rights to elect continuing coverage under the health plans. On June 10, 1997, her attorney wrote a letter to Favorite Brands inquiring about plaintiff's COBRA right. On or about July 10, 1997, plaintiff received a COBRA notice [the "Notice"] from Favorite Brands. The Notice provided that, "your enrollment form must be postmarked no later than September 10, 1997; otherwise, you[r] coverage will have terminated as of midnight, December 31, 1996." The transmitter of the Notice was stated as "Favorite Brands International COBRA Administration Center."

### DISCUSSION

#### I. Standard for a Motion to Dismiss

A motion to dismiss for failure to state a claim may not be granted unless "it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993). Generally, in reviewing a motion to dismiss, the court accepts all factual allegations as true and draws all inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996).

## II. COBRA Violation

COBRA requires the plan sponsor of each group health plan to provide each qualified beneficiary, who would lose coverage under the plan as a result of a qualifying event, an option to continue coverage under the plan. 29 U.S.C. § 1161. Upon occurrence of a qualifying event, "the employer of an employee under a plan must notify the administrator ... within 30 days ... of the date of the qualifying event[.]" 29 U.S.C. § 1166(a)(2). The administrator then must notify, within 14 days of receiving the notification from the employer, any qualified beneficiary of his COBRA rights. 29 U.S.C. § 1166(a)(4)(A) & (c). Any administrator who fails to meet this notification requirement "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure ..., and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1).

In its motion to dismiss, Favorite Brands raises three arguments: (1) the termination of plaintiff's employment did not result in the loss of coverage; (2) Favorite Brands is not a plan administrator; and (3) plaintiff does not allege that she has suffered any actual injury. For the following reasons all three arguments are denied.

*(1) The loss of coverage.*

■ The term "qualifying event" means any one of six listed events "which, but for the continuation coverage required under [the COBRA amendments], would result in

the loss of coverage of a qualified beneficiary[.]" 29 U.S.C. § 1163. "The termination" of the beneficiary's employment is one of the six events listed in § 1163. Under certain circumstances, termination of an employment may not be a qualifying event due to lack of actual loss of coverage. *Fenner v. Favorite Brands International, Inc.,* No. 97 C 5906, 1998 WL 249232, at *5 (N.D.Ill. May 12, 1998). However, a "loss of coverage need not occur immediately after the qualifying event as long as the loss of coverage occurs before the end of the eighteen month maximum coverage period." *Collins v. Strategic Health Care Management Serv. Inc.,* No. 91 C 7469, 1992 WL 92099, at *5 (N.D.Ill. Apr.28, 1992). Most importantly, "it is the terms of the plan that matter in defining the appropriate 'trigger' [of the loss of coverage]." *Gaskell v. Harvard Coop. Soc'y,* 3 F.3d 495, 501 (1st Cir.1993).

The Summary Plan Description [the "Plan"] of plaintiff's health care plan states that an employee's coverage ends on the earliest of the following dates: "[1] on the last day you work for Favorite Brands International; [2] on the last day of the month in which you stop making contributions to the plan; or [3] on the date the plan ends." Plaintiff does not allege occurrence of event [2] nor event [3]. Therefore, according to the Plan, plaintiff's termination caused the coverage to end and it is a qualifying event.

■ Defendant argues that plaintiff's termination did not result in the loss of coverage because the plain language of the Notice [1] is clear that plaintiff's coverage "would have been continued or reinstated based upon Plaintiff's own election." A similar argument was rejected in *Mansfield v. Chicago Park Dist. Group Plan,* 997 F.Supp. 1053 (N.D.Ill.1998), in which the court analyzed the issue of determining a qualifying event by interpreting the legislative intent underlying COBRA. In *Mansfield,* the court stated that if the same medical coverage continues automatically after termination, no qualifying event occurs. *Mansfield,* 997 F.Supp. at

---

**1.** Defendant added emphasis on following sentences from the Notice: "If you want to elect COBRA coverage, you must complete and sign the COBRA enrollment form, any other applica-

ble enrollment forms and *submit your July premium.* If you do NOT want to *continue* coverage, you must sign the COBRA waiver form."

1057. "However, if the health plan requires any action by the employee to continue this coverage, and without this action the employee's coverage would terminate, then [the termination of the employment] [2] is a qualifying event and the employer must give its [terminated] employee [a] COBRA notice." *Id.*

In the instant case, according to the Notice, the continuation of coverage that defendant claims, after the termination till the day defendant sent the Notice, required an action by plaintiff — to complete and sign the COBRA enrollment form and have them postmarked no later than September 10, 1997 — and without this action the coverage would be terminated retroactively as of midnight, December 31, 1996. According to *Mansfield,* because the Plan did not provide for automatic continuation of coverage, the termination of plaintiff's employment was clearly a qualifying event which triggered the loss of coverage regardless of when the loss of coverage actually occurred, either at the time of plaintiff's termination on January 27, 1997, or at the time the Notice was sent to plaintiff dating July 10, 1997.

■ Defendant's argument that there was continuation of coverage fails on another ground. Defendant concedes that the premium for plaintiff's health plan for the period after the termination was not yet paid as of July 10, 1997, the date of the Notice, but defendant would have retroactively paid it if plaintiff had chosen to continue the plan by paying the July premium. According to the Plan, as mentioned earlier, coverage may end on the last day of the month in which contributions to the plan stop. Because neither Favorite Brands nor plaintiff had paid the premium of the health plan since the termination on January 27, 1997, plaintiff's coverage must have ended, if not on the date of termination as plaintiff argues, then on the last day of February 1997. Defendant's mere statement that it would have retroactively paid for plaintiff's coverage on plaintiff's COBRA election does not negate the fact that there was a loss of coverage and

**2.** In *Mansfield,* the beneficiary was a retiring person rather than an ordinarily terminated person. However, retirement is one form of em-

that the notice requirement of 29 U.S.C. § 1164(a)(4) had been triggered.

Thus, even if the court does not treat the termination date as the date a qualifying event occurred, the last date of February would be the date of the qualifying event because it was the last day of the month in which contributions stopped.

*(2) Plan Administrator*

■ Under 29 U.S.C. § 1164(a)(4), the "administrator" must notify the qualified beneficiary of his or her COBRA rights. Section 1002(16)(B) defines the term "administrator" as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor." Favorite Brands argues that, according to. the Plan, it was a "plan sponsor" and not a "plan administrator" at the time of plaintiff's termination, and thus not subject to section 1164(a)(4) regulation.

■ The Plan names Favorite Brands as the "Plan Sponsor" and United Health Care Administrators, Inc. ["United"] as the "Claims Administrator." Defendant's argument implies that a "claims administrator" is the "plan administrator." However, the term "claims administrator" is not synonymous to "plan administrator," and not all claims administrators are concurrently plan administrators. *See e.g., Kost v. United Parcel Serv., Inc.,* No. CIV.A.95–4144–DES, 1996 WL 459815 (D.Kan. July 11, 1996) (recognizing a separate claims administrator from a plan administrator). Because neither were specified as the "plan administrator" the court must further examine the Plan to find who was specifically designated to perform the duties of plan administrator.

Under the subtitle "How to Apply for Continuing Coverage," the Plan provides:

Favorite Brands International will notify you or your eligible dependents when you become eligible for continuation coverage for the following reasons:

ployment termination, and thus the law of *Mansfield* is applicable in the instant case.

- your employment ends for any reason except gross misconduct
- you retire; or
- you cease to be a regular, full-time employee.

After Favorite Brands International receives notice of a qualifying event, *the Company will notify you of your COBRA options* for continuing coverage. [Emphasis added].

Throughout the Plan the terms "Company" and "Favorite Brands International" are used interchangeably. United, on the other hand, is designated by the Plan to "handle[ ] the operation of the plan, interpret[ ] plan provisions, and make[ ] the final decisions about such issues as eligibility and arrange[ ] for all benefit payments." Between Favorite Brands and United, it is clear from the language of the Plan that Favorite Brands had the duty to notify its employees of their COBRA rights.

Favorite Brands may qualify as a plan administrator for the purpose of ERISA either by the specific designation of the duties of a plan administrator, 29 U.S.C. § 1002(16)(B)(i), or by the default provision of (B)(ii). By either means, this court finds Favorite Brands to be the plan administrator. *See e.g., Presley v. Blue Cross–Blue Shield of Alabama*, 744 F.Supp. 1051 (N.D.Ala.1990) (stating that the employer, rather than the claims administrator, would have had the COBRA notification duty, either as the designated "administrator" or as the "plan sponsor," if the employee had been covered under the plan).

*(3) Lack of Actual Injury or Prejudice*

 Favorite Brands further argues that plaintiff is not entitled to recover any portion of the civil penalty provided under section 1132(c)(1) of ERISA because plaintiff has suffered no injury. However, proof of

injury or prejudice is not a prerequisite to a claim under section 1132(c). *Winchester v. Pension Comm. of Michael Reese*, 942 F.2d 1190, 1193 (7th Cir.1991). *See also Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 588 (1st Cir.1993); *Pagovich v. Moskowitz*, 865 F.Supp. 130, 137 (S.D.N.Y. 1994); *Underwood v. Fluor Daniel, Inc.*, 106 F.3d 394, 1997 WL 33123, *4 (4th Cir.1997); *Davis v. Featherstone*, 97 F.3d 734, 738 (4th Cir.1996); *Godwin v. Sun Life Assurance Co. of Canada*, 980 F.2d 323, 327 (5th Cir. 1992); *Bartling v. Fruehauf Corp.*, 29 F.3d 1062 (6th Cir.1994); *Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir.1994); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir.1993).[3]

These circuit courts agree that the purpose of section 1132(c)(1) is to punish the plan administrators for noncompliance with ERISA, *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir.1996), and that lack of prejudice or injury does not bar the imposition of penalties. *Davis*, 97 F.3d at 738. Instead, the courts use the extent or lack of prejudice or injury as the considering factors in exercising their discretion to impose a penalty. *Moothart*, 21 F.3d at 1506.

 Defendant argues that the cases cited above apply section 1132(c)(1) to ERISA claims and not to COBRA claims. However, defendant cites no case making such distinction, and this court has not found any such case. On the contrary, the Fourth Circuit in *Underwood* applied and cited this caselaw in deciding a COBRA claim. 1997 WL 33123, at *4.

*Underwood's* application of the caselaw to COBRA is supported by the plain language and structure of section 1132(c)(1):

(c) Administrator's refusal to supply . . . .

(1) Any administrator

---

3. The three cases cited by defendant in support of his argument that an actual injury is required for recovery under 29 U.S.C. § 1132(c)—*Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357 (5th Cir.1981); *Shlomchik v. Retirement Plan of Amalgamated Ins. Fund*, 502 F.Supp. 240 (E.D.Pa.1980); and *Kelly v. Chase Manhattan Bank*, 717 F.Supp. 227 (S.D.N.Y.1989)—all have been explained or criticized by *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 847 (11th Cir.1990), *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F.Supp. 1061, 1066 (M.D.Ala.1988), and *Pagovich v. Moskowitz*, 865 F.Supp. 130, 137 (S.D.N.Y.1994), that such is not a required factor but is a factor considered by courts in assessing the amount of penalty.

(A) who fails to meet the requirements of paragraph (1) of (4) of section 1166 of this title or section 1021(e)(1) of this title with respect to a participant or beneficiary, or

(B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day form the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

The penalty language starting from "may in the court's discretion" applies equally to both (C)(1)(A) (relating to COBRA) and (C)(1)(B) (relating to ERISA). Thus, the statute gives the court discretion to impose a penalty regardless of whether the defendant is an ERISA or a COBRA plan administrator.

## III. Conclusion

For the reasons set forth above, defendant's motion to dismiss Count II of the Second Amended Complaint is denied. This matter is set for a report on status on November 18, 1998, at 9:00 a.m.